**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willene McCOWAN, aka Willine
McCowan, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leroy MILLS, Jr., Defendant-Appellant.**

**Nos. 72–1462, 72–1463.**

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1972.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okla. (William R. Burkett, U. S. Atty., on the brief), for plaintiffs-appellees.

Forest E. Clark, Jr., Denver, Colo., for defendants-appellants.

Before LEWIS, Chief Circuit Judge, McWILLIAMS, Circuit Judge, and CHRISTENSEN, Senior District Judge.[1]

## PER CURIAM.

These appeals from judgments of conviction upon verdicts of a jury present questions concerning the admissibility and sufficiency of the evidence. In the case first listed the appellant Willene McCowan was found guilty and sentenced for forgery, and uttering and publishing of a United States Treasury check, in violation of 18 U.S.C. § 495; in the other case appellant Leroy Mills, Jr., for aiding and abetting appellant McCowan in uttering and publishing the same check. 18 U.S.C. § 2. Appellants were jointly tried and their appeals have been consolidated here.

There is incontestably competent evidence in the record indicating that appellant McCowan without authority opened a government envelope addressed to one Christine E. Shope, a former tenant of the premises occupied by McCowan, and found therein a $500 United States Treasury check payable to one Christine E. Shope; that the appellant Mills who was staying at the same premises examined the check and that his fingerprints were found thereon despite his initial denial to an F.B.I. agent that he had seen the check; that McCowan called upon Carroll Huffman, her sister-in-law, and requested her to endorse the check with the name of the payee; that upon Mrs. Huffman's refusal to do so, a young girl named Carol Hutchinson, intimately associated with a brother of McCowan, volunteered to endorse the check; that McCowan, carrying the check, entered an automobile in which Mills and another person or per-

---

1. Of the District of Utah, sitting by designation.

sons were riding; that thereafter Mills sought to cash this check at a service station in Lawton, Oklahoma, under the representation that it belonged to his wife, but was told by the attendant, son of the proprietor, that his wife would have to be identified before the check would be cashed; that about an hour later Mills arrived with McCowan and identified her as his wife; that the check was cashed by payment of $400 to Mills, furnishing of $6 worth of gasoline for the automobile in which the appellants were riding, and promising to pay the balance of $94 as soon as additional cash was obtained from a bank by the service station operator; and that the $94 balance later was paid to Mills.

■ While there was evidence also tending to show that Carol Hutchinson endorsed the check not at the request of the appellant McCowan, or in her presence, but at the request of another woman by the name of Ruby Johnson, sister of McCowan, a reading of the transcript is convincing that there was abundant evidence from which the jury could have found beyond a reasonable doubt that each defendant was guilty as charged. The trial court therefore did not err in denying motions for acquittal at the close of the evidence.

As indicated above, Carol Hutchinson testified that when she endorsed the check Ruby Johnson, not the appellant McCowan, had brought the check to her, and she further testified that Carroll Huffman was not present when she endorsed the check. After stating who was present and what was done at the time the check was endorsed, Carol Hutchinson was asked by counsel for appellants what Ruby said to her. The government's objection to this question as hearsay was sustained by the trial court. Thereafter, the witness volunteered that "she (Ruby Johnson) handed me this check right here and asked me to sign it for her and she told me that it was her cousin's and that she was sick and she couldn't sign it." The trial court struck the testimony of what was said as hearsay and instructed the jury

to disregard it. The appellants assert that these rulings constituted prejudicial error.

■■ Proof of extrajudicial declarations when relevant and material for purposes other than to prove their truth may not be precluded by the hearsay rule. See United States v. Brown, 411 F.2d 1134 (10th Cir. 1969). But while appellants argue that the statements in question were not sought to be introduced to establish their truth but only "to prove that they had been made", it seems doubtful that they possessed any significance in the latter sense. The witness already had testified that the check had been brought to her by Ruby Johnson when neither Carroll Huffman nor the appellants were present and that she endorsed the check under those circumstances. The court's ruling had the effect of eliminating reference to an express request by Ruby Johnson for the endorsement, but this was implicit in the circumstances. If the statement that the check was "her cousin's and that she was sick and she couldn't sign it" had any additional import, it would be purely hearsay. No offer of proof was made other than as indicated by the stricken testimony and hence whether the precluded answer would have produced any additional admissible statement is not revealed by the record and may not be considered. United States v. Fletcher, 444 F.2d 619 (10th Cir. 1971); W. C. Moorhead, Jr. v. Stearns-Roger Manufacturing Company, 320 F.2d 26 (10th Cir. 1963); McDonald v. United States, 246 F.2d 727 (10th Cir. 1957). We cannot say that the rulings of the trial court in the respects mentioned were erroneous.

■ Appellants next complain of the court's sustaining an objection to the cross-examination of Jesse Salazar, the service station attendant, about association with the Lawton police department. The witness was subject to reasonable cross-examination concerning possible motives to fabricate. His relationship with enforcement officers could be rele-

# 364

vant and material to credibility. The record does not disclose whether in fact there was any such relationship, or its materiality. No offer of proof was made to indicate any prejudice even if a technically unjustifiable limitation of cross-examination were assumed. Moreover, after discussion with the court appellants' counsel expressly withdrew the question.

■ Perry Clay, Jr., a witness who testified concerning the appellants' participation in the check cashing episode at the service station, on cross-examination was asked by appellants' counsel whether he had read the contents of an affidavit which he had executed prior to trial. The government's objection to further questioning of the witness concerning the affidavit was sustained, the court explaining at a bench conference that the affidavit could be used only if it contained statements contrary to what the witness had testified to at the trial. After representation that it did contain such inconsistent statements the court added: "Well, I think it is proper for you to ask him if this is his affidavit and ask him if on such an occasion he made this statement, but you must be sure that it is contrary to his testimony here . . ." The court thereupon read the affidavit to himself and then stated: "You can't use this at all. This does not impeach anything that he said." Counsel for the appellants then responded that he would question the witness on cross-examination. However, he failed properly to follow the matter up. There was no attempt through cross-examination to lay the foundation for proof that any specific statements made in either the direct or cross-examination were inconsistent with those made in the affidavit.

The only further reference to the affidavit occurred toward the close of Clay's examination when he was asked by appellants' counsel what he told a Secret Service agent concerning the appellants' visit at the service station and the witness replied: "I told him that to my knowledge and I thought about it, was Leroy okay (sic) that he brought the check up there when he asked me to identify him when he came back to pick the check up, pick the rest of the money up." Appellants' counsel then stated: "Your Honor, may I at this time introduce this affidavit?" The court responded: "No sir. It does not contain anything contrary to his direct testimony." The cross-examination was thereupon voluntarily concluded.

■■ Given a proper foundation for inquiry, ordinarily it is for the jury rather than the court to determine whether inconsistencies between statements exist or are material. We do not condone any failure of the trial court to make the affidavit which it examined and commented upon a part of the record whether received or not.[2] It is highly desirable for offered exhibits to be retained as part of the trial record even though improper for jury consideration in order to facilitate review of related rulings. Nor do we think that the trial court was correct in indicating at one point that only in the event the affidavit conflicted with the witness' "direct" examination could it be received; it also may have been proper had there arisen significant conflicts between its statements and answers elicited from the witness through cross-examination. Yet again, despite the court's prior instruction to counsel, no foundation for the receipt of the affidavit or any part of it was laid. That the affidavit may have contained some contradictory statements did not necessarily render it admissible in its entirety. To deny the offer of the affidavit as a whole in the record context was not error.

The required procedure for impeachment of a witness for prior inconsistent statements was well stated in Brooks v.

2. For all the record discloses the oversight may have been that of counsel in failing to have identified and to leave the affidavit with the court when his offer was rejected, or in failing to designate the affidavit as a part of the record here if, indeed, off the record it had been identified and lodged with the clerk below.

United States, 309 F.2d 580, 582 (10th Cir. 1962):

"In laying the foundation for admission of prior inconsistent statements of a witness, it is necessary that the prior statements be called to his attention, and that he be given an opportunity to admit, deny, or explain them. Only those portions of the prior statements which tend to contradict the testimony given at the trial are admissible. * * * When the testimony of a witness during trial has been impeached by showing previous contradictory statements the jury is free to accept or reject the trial testimony [citations omitted]." [3]

At the close of the direct examination of the appellant McCowan the following occurred:

"Q. [by counsel for appellants]: Is Ruby Johnson related to you?

"A. Yes, she is my sister.

"Q. Has there been any previous time when Ruby Johnson, in your presence, has been involved in the, anything relative regarding (sic) the check?

"Q. [by Mr. Green for the government]: We are going to object your Honor.

"The Court: Sustained.

"Q. Have you ever been in the past with Ruby when anything involving a bad check came up?

"By Mr. Green: To which we are going to object your Honor.

"By the Court: Sustained."

Appellants argue that the court's ruling precluded them from showing in line with their counsel's opening statement that Ruby Johnson, not appellant McCowan, obtained the check, took it to Carol Hutchinson and had her sign the payee's name on the back, then took the check in the company of one Bean, a deserter from the Army unavailable for testimony, to the service station and sat in the car while Bean went into the station and cashed the check.

But there is nothing to show that the inquiry in question was designed to elicit any competent evidence in support of appellants' theory. On the contrary, it appears likely that hearsay was contemplated. McCowan already had testified as to her lack of knowledge concerning the check following a time she claimed she resealed the envelope containing it prior to any endorsement and placed it in the mailbox for redelivery.[4] No offer of proof was made; no clear indication appears whether reference was made to the check in question or some other check. From the last quoted question an inference reasonably could be drawn that the check referred to was not the one with which we are concerned. If the significance of excluded evidence is not obvious, an offer of proof must be made to preserve the question on appeal. United

3. Judge Pickett's opinion for the court in *Brooks* that use of a witness' prior contradictory statement as substantive evidence was plain error was given new emphasis in United States v. Neal, 452 F.2d 1085 (10th Cir. 1971). While *Brooks* and *Neal* accurately state the present rule of this circuit it should be noted that Rule 801(d) of the Rules of Evidence for United States Courts and Magistrates, approved by the Supreme Court on Nov. 20, 1972, and to become effective July 1, 1973, provides that prior inconsistent statements of a witness are not to be included within the definition of "hearsay" for the purposes of the Rules. While it may now be surmised that this change will affect the present rule precluding the consideration of contradictory statements as substantive evidence, it involves no change in the foundational requirements laid down in *Brooks* and *Neal* which are significant here.

4. "Q. Did you know anything further of the check after that?
"A. Well, the Secret Service came on Bishop Road where we were staying and took us down to the station and it was about this check here.
"Q. Is that the first time you had any further knowledge or contact with this check?
"A. The day—when the F. B. I. come by."

States v. Fletcher, 444 F.2d 619 (10th Cir. 1971), *supra*. We are not in a position to say that the ruling of the trial court was error, much less prejudicial.

 The evidence against the appellants was overwhelming. No significant rulings of the trial court are shown to have been erroneous. Even though from counsel's failure to establish proper foundations some inquiries may have been shunted in deprivation of a perfect trial, no prejudice appears and we are convinced that appellants had a fair one. This is enough. Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).

Affirmed.