**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene L. SMALDONE, Defendant-
Appellant.**

**No. 73–1081.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 11, 1973.

Decided Aug. 14, 1973.

Rehearing Denied Aug. 31, 1973.

James M. Shellow, Milwaukee, Wis. (Stephen M. Glynn, of Shellow & Shellow, Milwaukee, Wis., and Peter H. Ney, Englewood, Colo., of counsel, on the brief), for defendant-appellant.

Paul D. Cooper, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., on the brief), for defendant-appellant.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The appellant seeks reversal of a judgment of conviction and a sentence of ten years. He was charged in Count III of the indictment with conspiracy to import cocaine in violation of 21 U.S.C. § 963. He had been charged also in the same indictment in Count II with aiding and abetting importation of cocaine contrary to 21 U.S.C. § 952(a) and 18 U.S.C. § 2, and Count IV charged him with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Trial was to a jury which returned verdicts of not guilty as to Counts II and IV and of guilty of Count III, conspiracy.

In the third count it was alleged that on or about March 29, 1972, and continuing to June 9, 1972, defendant and Larry A. Merkowitz wilfully and knowingly combined, conspired, confederated and agreed together with each other and with Craig Mundt, Ronald Greenspan and other persons to knowingly and intentionally import cocaine. The overt acts set forth in Count III of the indictment state that on May 11, 1972, Larry A. Merkowitz gave to Ronald Nocenti $18,500 with which to purchase cocaine in Peru; that Eugene L. Smaldone caused a sum in excess of $9,000 to be delivered to Larry A. Merkowitz to pay for the cocaine; that Ronald Greenspan and Craig Mundt met with Ronald Nocenti at Aurora; that Greenspan and Mundt went to Peru; and that Merkowitz and Smaldone accepted delivery of cocaine imported from South America.

The evidence established that Larry A. Merkowitz was a pharmacist who operated a drugstore in Aurora, Colorado, and Nocenti was a paid government informant. The plan called for Mundt, Greenspan and Nocenti to go to Peru, buy the cocaine and deliver it to Merkowitz and Smaldone. All of this commenced in April 1972, when Smaldone first met Merkowitz who told him of the scheme. According to Merkowitz, Smaldone said that he was interested in investing in the deal, and subsequently Smaldone was told that cocaine would cost $6,500 per kilo. Thereafter, Smaldone met with Merkowitz at his pharmacy and delivered $8,750 stating that he would furnish an additional $1,000 so that he could buy one and one-half kilos. An equal amount was contributed by Merkowitz and the total was transferred to Nocenti who went to Peru and there by prearrangement met Mundt and Greenspan. Merkowitz had had some previous transactions in cocaine, and on or about April 13, 1972, he told Nocenti that Mundt and Greenspan wanted Nocenti to participate in smuggling cocaine from Ecuador. Later, Merkowitz told Nocenti that he was to be included. Two days after that Merkowitz met Smaldone at the apartment of one Judy Good. The discussion had to do with obtaining vitamins for Good's racing dogs. According to Merkowitz, he asked Smaldone on this occasion if he knew Mundt and Greenspan and was aware of their proposed smuggling venture. According to further testimony of Merkowitz, Smaldone stated that he would be interested in investing in this. On May 4, 1972, Merkowitz took Nocenti to Mundt's ranch east of Broomfield. Nocenti there met with Mundt and Greenspan. The very next night Merkowitz told Smaldone that Mundt, Greenspan and Nocenti had made arrangements for the trip to Peru and the cocaine was to cost $6,500 per kilo. According to Merkowitz, Smal-

done said that he did not trust Mundt and he was curious as to the trustworthiness of Nocenti. He questioned Merkowitz about this. Smaldone also said that he was not sure that he wanted his share of the cocaine to be sold by Nocenti or to be sold by himself. Merkowitz in turn borrowed money from the Aurora National Bank and delivered $9,750, the same amount that Smaldone had furnished to Nocenti on May 11, 1972. Nocenti returned from Peru on May 29, 1972.[1]

On May 29, 1972, Smaldone informed Merkowitz that Nocenti was back in town. Merkowitz tried to arrange a meeting between him, Nocenti and Smaldone. Merkowitz met Nocenti and following the delivery of a briefcase to him Merkowitz was arrested.

Nocenti also contacted Smaldone. The latter went to the Sheraton Motor Inn and met with Nocenti, accepting a packet containing alleged cocaine and he was arrested on that occasion.

Merkowitz testified at great length, particularly on cross-examination. His pretrial investigative statements were furnished to the defendant. Included was an affidavit which he had made to the agents of the Bureau of Narcotics and Dangerous Drugs. Also included was a question and answer statement (13 pages long) and a statement which he had given to the probation officers in connection with the presentence investigation which they conducted. A few days before trial he was examined extensively by the Assistant United States Attorney who, according to the finding of the court, was then preparing for trial. These were questions and answers, and in some instances the U. S. Attorney had Merkowitz verify the answer that he had just given.

Some difficulty arose during the trial concerning the sufficiency of the government's proof to establish that the substance delivered was cocaine. It would appear that this is largely the reason for the acquittal on Counts II and IV.

Numerous and varied points are advanced by Smaldone in support of this appeal. There are a number of pretrial motions (1) seeking dismissal on the ground that the classification of cocaine as a narcotic is invalid; (2) that the motion for a bill of particulars to require identity of persons alleged in the indictment to be to the Grand Jury unknown was denied, and also denial of the requested disclosure of unindicted coconspirators; (3) the motion for pretrial discovery of results or reports of scientific tests or experiments. (4) It is also contended that the court committed error in limiting cross-examination of Merkowitz and particularly in refusing to require the production of the question and answer statement taken by the U. S. Attorney just before the trial. It is said that this was subject to production under the Jencks Act, 18 U.S.C. § 3500; (5) refusal of the court to allow defendant's counsel to elicit the present address of the witness Nocenti; (6) refusal of the court to give submitted instructions and the giving by the court of an erroneous instruction on intent.

## I.

### CROSS-EXAMINATION OF MERKOWITZ AND THE 18 U.S.C. § 3500 PROBLEM

Complaint is made that the trial court limited counsel's cross-examination of the witness Merkowitz and committed specific error in refusing to require the U. S. Attorney to produce his own notes taken while interviewing Merkowitz immediately prior to trial.

It is important to note that the cross-examination extended over some 90 pages in the record. It addressed itself to a variety of subjects and there is no evidence to suggest that it was curtailed or limited. The one point which re-

---

[1]. We gather that Mundt and Greenspan were arrested in Peru and that Nocenti brought $17,500 of the money back with him and also some samples of cocaine seized by the Peruvian police.

quires discussion is the refusal of the court to require the U. S. Attorney to produce his notes. On this it is important to mention that virtually every investigative statement made by Merkowitz was furnished to the defense. Merkowitz had given an extensive and detailed affidavit to the narcotics agents and this was furnished to the defendant. So also was a question and answer statement conducted by the narcotics agents (13 pages in length). The court even allowed the defense to have the statement given by Merkowitz to the probation officers following his plea of guilty, noting that this was not in the custody of the prosecution and hence was not strictly speaking a § 3500 statement, but the court gave it over regardless. In the course, however, of the very thorough and competent cross-examination by counsel for the defendant, it appeared that Merkowitz had been questioned by the prosecution a few days prior to testifying. There was a questioning on Wednesday and further questioning on Thursday. Notes were made by the Assistant U. S. Attorney on a yellow pad. On cross-examination defense counsel brought out that the Thursday interview was a two-hour one by the U. S. Attorney at which some of the answers were written down. Merkowitz stated that the U. S. Attorney "made notes." He was then asked if the U. S. Attorney would read them back to him on occasion to make sure that they were accurate. The response was "Sometimes." Based upon that one answer, counsel moved for production of the yellow pad. The court reserved a ruling on that, presumably to allow counsel to develop the subject further. Counsel did not, however, choose to do so.

At the conclusion of Merkowitz' cross-examination, the court noted that it had not ruled on counsel's demand. The U. S. Attorney objected, citing United States v. Myerson, 368 F.2d 393 (2d Cir. 1966). Defense counsel offered no authority, merely saying that there was a conflict between the work product of the U. S. Attorney and the mandate of § 3500, and that in any criminal case the work product of the U. S. Attorney must yield. Counsel then demanded that the court conduct an *in camera* inspection of those notes. Based upon the facts presented by defense counsel, the court ruled that the material demanded was not a § 3500 statement. The Judge said:

THE COURT: Well, the Court's ruling on this is that in view of the testimony here that was related and the taking of notes by Mr. Cooper who is trying the case for the Government, just within the last few days, obviously in preparation for the trial, in the Court's opinion is not a 3500 statement and the request is denied.

Much is now made of this refusal. The question is whether the notes made by the U. S. Attorney from these interviews qualified as statements as that definition is given in 18 U.S.C. § 3500.[2]

The statute in question was adopted by Congress following the Supreme Court's decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The object of the statute was to protect government files from unwarranted disclosure, but at the same time to allow defendant to review material which could be regarded as a statement for the purpose of impeachment. *See* Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Ayash v. United States, 352 F.2d 1009 (10th Cir. 1965).

2. It provides:
(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

Since the adoption of § 3500 the cases have held that the defendant has the burden of showing that a particular statement qualifies as such and is subject to production. *See* Annot., 1 A.L.R. Fed. 252 (1969) and the cases there cited. No such showing was here made. All we have to go on is that the Assistant U. S. Attorney made some notes of the interview plus some reading back, and the record supports the conclusion that these were made as a part of his preparation for trial. Counsel chose to stand on one fact brought out by him to the effect that occasionally the U. S. Attorney read back an answer. From this he would have us hold that this material qualified as a statement. Even as to the reading back, we are not told whether the answers read were verbatim or substantially so. For this reason alone the statement does not qualify. *Cf.* Campbell v. United States, 373 U.S. 487, 492, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) and *see* United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), wherein a government agent questioned a witness and made rough pencil notes of the conversation. The Supreme Court through Mr. Justice Douglas ruled that due to the inadequacy of the record presented it was impossible to ascertain the nature of the notes and the Court chose to rely on the trial judge's "good sense and experience." To the same effect is United States v. Lamma, 349 F.2d 338 (2d Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 407, 15 L.Ed.2d 355 (1965), and *see* the cases cited in Annot., 5 A.L.R.3d 763 (1966). In summary, the vagueness of the presentation by defendant designed to establish that the notes constituted a statement is a sufficient answer. We are not dis-

posed to react on any ritualistic basis merely because there was some reading back.

We recognize that there is not a work product exception as such and we do not base our ruling on any such rule. *See* United States v. Hilbrich, 341 F.2d 555, 557 (7th Cir.), cert. denied, 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed.2d 704 (1965). *Cf.* United States v. Augenblick, *supra*, and United States v. Myerson, 368 F.2d 393, 395 (2d Cir. 1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). At the same time, the courts have shown some reluctance to treat attorneys' notes as statements absent a showing that they satisfy the statutory definition. *See* United States v. Gosser, 339 F.2d 102, 113 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66 (1965). *Cf.* United States v. Spatuzza, 331 F.2d 214, 218 (7th Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964); United States v. Crosby, 294 F.2d 928, 951 (2d Cir. 1961), cert. denied sub nom. Mittelman v. United States and Meredith v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962). Thus, the cases have inclined to rule that material which was notes rather than statements was not shown to be narrative, for example. United States v. Hoffa, 349 F.2d 20, 48 (6th Cir. 1965), aff'd on other grounds, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). *See also* United States v. Aviles, 315 F.2d 186, 191–192 (2d Cir.), vacated and remanded, 375 U.S. 32, 84 S.Ct. 24, 11 L.Ed.2d 106 (1963), on remand aff'd, 337 F.2d 552 (2d Cir. 1964), cert. denied, 380 U.S. 906, 85 S.Ct. 885, 13 L.Ed.2d 794 (1965).[3] To the same effect is

---

3. In that case it was said:

In determining whether the Shaw notes were "statements" within the Jencks Act definition of that term, 18 U.S.C. § 3500(e), the cases provide certain well-defined criteria to assist us. Such a statement must, of course, be "a substantially verbatim recital of an oral statement made by [the] witness to an agent of the Government and recorded contemporaneously with

the making of such oral statement." 18 U.S.C. § 3500(e)(2). The statement must fairly be "the witness' own words." Palermo v. United States, 360 U.S. 343, 352, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). It must "reflect fully and without distortion what had been said to the government agent." Ibid. The distortion which Congress sought to avoid by its narrowly-drawn definition "can be a product of selectivity

**318**

United States v. Thomas, 282 F.2d 191, 194 (2d Cir. 1960). *Cf.* Dennis v. United States, 346 F.2d 10, 20 (10th Cir. 1965), vacated on other grounds, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Johnson v. United States, 269 F.2d 72 (10th Cir. 1959).

▇ The fact that there is a partial reading back and verification does not necessarily render the material a statement. *See* Matthews v. United States, 407 F.2d 1371 (5th Cir. 1969), cert. denied, 398 U.S. 968, 90 S.Ct. 2177, 26 L. Ed.2d 554 (1970); United States v. Scaglione, 446 F.2d 182, 183–184 (5th Cir.), cert. denied, 404 U.S. 941, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971). *See also* Menendez v. United States, 393 F.2d 312, 316 (5th Cir. 1968), cert. denied, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 572 (1969).[4]

▇ Finally, in view of the vast extent of the cross-examination and the extensive prior statements of Merkowitz which were furnished to the defense, we fail to perceive prejudice. *See* Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). *Cf.* Government of Virgin Islands v. Lovell, 410 F.2d 307 (3d Cir.), cert. denied, 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428 (1969).

## II.

### REFUSAL TO ALLOW DEFENDANT TO ELICIT THE ADDRESS OF NOCENTI

The witness in question was a paid government informant. As one would expect, the defendant was allowed to cross-examine him regarding his relationship to the government in minute detail. But the court sustained the government's objection to the question as to the witness's present address and this is assigned as error citing the Supreme Court in Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) which hold that the right to cross-examine is constitutional in nature.

▇▇ Ordinarily the question of address is a pertinent one having for its purpose the presentation of a background setting against which to test the credibility of the witness. This is not, however, invariable. In Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L. Ed.2d 956 (1968), the Supreme Court noted that a trial judge is under a duty to protect the witness from questions which go beyond the bounds of proper examination merely "to harass, annoy or humiliate" him, quoting from Alford v. United States, *supra*. In *Smith*, for example, the witness was using a fictitious name and his address was of some importance in establishing his identity. Here, with all of the pretrial investigation and discovery and the very extensive cross-examination, no such problem existed. Moreover, the witness was not a permanent resident of Denver and, as will be shown, there existed at least some problem of protection, and the lower federal courts have interpreted the Supreme Court's language concerning harassment, annoyance or humiliation to include exposure of the witness to danger. *See* United States v. Alston, 460 F.2d 48, 51–52 (5th Cir. 1972) and the cases cited therein. *See also* United States v. Varelli, 407 F.2d 735 (7th Cir. 1969), cert. denied, Saletko v. United States, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972).

▇ In the case at bar then there was no lack of knowledge on the part of the defendant as to the background of the witness Nocenti. Counsel was allowed to cross-examine him in minute detail. Thus, there was not present the usual necessity to bring out the address

as well as the conscious or inadvertent infusion of the recorder's opinions or impressions." Thus, "a report which merely selects portions, albeit accurately, from a lengthy oral recital"

will not be producible under the Act. Ibid.

4. In these cases generally there existed something less than verbatim adoption or an exact replica of the statement.

of the witness; and the defendant was not deprived of knowledge of where he lived and what his business was as was said in *Alford*. Also, the trial court had been informed by the prosecution that the witness had been relocated because there existed "an apparent danger to the physical health and well-being" of the witness. This was contained in the government's objections to continuance which, although not specifically mentioning Nocenti, clearly referred to his situation. Also, the U. S. Attorney had notified counsel for the defendant by letter that "substantial reason to fear for his safety has been shown and he (Nocenti) has requested that his present whereabouts not be divulged." The defendant admittedly had involvement in gambling and at the very least the court could have believed that revealing the address of the witness would stir apprehension in the mind of the witness and thereby affect his testimony.[5]

Counsel for the defendant had reason to know that the government would object to this. Nevertheless, he did not seek to make a showing as to why he needed to have the information or as to why it would have been proper to allow him to bring it out. We view the effort of defense counsel as primarily tactical rather than as a desire to obtain the address. All in all, we think that the trial court was within its rights in denying this effort.

◼ Nor do we find abuse of discretion in the trial court's sustaining the objection as to whether Merkowitz had any hope or expectation that his sentence would be reduced based upon his testimony. Here again it was only the conclusory question that the court refused to allow. All of the other questions regarding any factual matter pertaining to promises, threats or other inducements were explored fully. Hence we see no prejudice.[6] Moreover, the question was somewhat repetitious or cumulative.[7]

◼ We have considered the other instances in which the trial court limited the cross-examination of Merkowitz. An example is the dates when he had opened his safety deposit box so as to open up the inference that he obtained the money for the cocaine from that source and the cross-examination regarding his owing money to a third person. These were efforts on the part of counsel for the defendant to establish his theory of the case. Being beyond the scope of the direct examination, it was proper for the court to sustain the objections.

## III.

## THE MOTION TO DISMISS THE INDICTMENT

◼ The defendant's contention is that the classification of cocaine as a narcotic drug in the statute is arbitrary, capricious and lacking in reason. Demand was made for an evidentiary hear-

---

5. *See also* defendant's Exhibit Q, Volume 11 of the record, an organized crime report which was called to the court's attention in support of motion for change of venue. The court refused to receive it in evidence on this occasion. Since this was tendered by the defendant it cannot be successfully argued that the trial judge was unaware of the possible connection of the defendant with organized crime.

6. *See* United States v. McCowan, 471 F.2d 361, 364 (10th Cir. 1972); United States

v. Amabile, 395 F.2d 47, 51–52 (7th Cir. 1968).

7. Nipp v. United States, 422 F.2d 509, 512–514 (10th Cir.), cert. denied, 397 U.S. 1008, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); United States v. Mahler, 363 F.2d 673, 677–678 (2d Cir. 1966). *See also* Hudson v. United States, 387 F.2d 331 (5th Cir. 1967), cert. denied, 393 U.S. 876, 89 S.Ct. 172, 21 L.Ed.2d 147 (1968); Orozco-Vasquez v. United States, 344 F.2d 827 (9th Cir.), cert. denied, 386 U.S. 1010, 87 S.Ct. 1354, 18 L.Ed. 2d 438 (1967).

**320**

ing. The court denied this request. Although an evidentiary hearing was not granted in respect to this, the trial court did receive affidavits on this question and concluded that the classification was proper. The judicial approach to this kind of question is that the classification will be upheld if any facts justify it. *See* United States v. Md. Savings-Share Ins. Corp., 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970). Moreover, the facts contained in the affidavits, in addition to the government's reply to the motion and case law, supported the reasonableness of the statutory classification. *See* Erwing v. United States, 323 F.2d 674 (9th Cir. 1963); Padilla v. United States, 278 F.2d 188 (5th Cir. 1960). We see no merit in the argument.

### IV.

### THE MOTION FOR BILL OF PARTICULARS AND OTHER DISCOVERY EFFORTS

A. Defendant sought an order requiring disclosure of names of co-conspirators alleged in the indictment to be "other persons whose names are to the Grand Jury unknown." The prosecution stated in open court that the names were not known at the time of the return of the indictment and had not been ascertained since that time. An examination of the indictment in light of the evidence presented convinces us that it was adequate to advise the defendant as to the factual transaction on which the indictment is based. There was no problem of surprise and no problem of vagueness or indefiniteness. Defendant was apprised of the charge against him and was not prejudiced in the preparation of his defense. The government has continued to state that there was no known information withheld about other persons involved in the conspiracy. We see no abuse of discretion. Rule 7 Fed. R.Crim.P.; Wyatt v. United States, 388 F.2d 395, 397 (10th Cir. 1968).

B. A related matter is the effort of defendant to ascertain whether an indictment had been returned against Mundt and Greenspan. At the time these two named co-conspirators were incarcerated in Peru on charges growing out of the transaction now under consideration. The contention of the defendant was that these two individuals had information which could exculpate the defendant at bar, but would not reveal their information by deposition unless they could have assurance that they would not be proceeded against in Colorado. The simple answer is that the existence of an indictment or the non-existence would not answer the need because even if there were no indictment this would not mean that there would not be one in the future. In any event, an indictment may under Rule 6(e) be kept secret in order to avoid fleeing from justice. Hence, discovery is in the discretion of the court. The court did not abuse its discretion. *See* United States v. Lewis, 406 F.2d 486, 493 (7th Cir. 1969); United States v. Deloney, 389 F.2d 324, 325 (7th Cir. 1968); *cf.* United ed States v. Beitscher, 467 F.2d 269, 272 (10th Cir. 1972).

C. Appellant also alleges as error the trial court's denial of his motion made under Rule 16 Fed.R.Crim.P. to disclose detailed laboratory findings and any records of tests with respect to the cocaine seized from Merkowitz and appellant.

Following appellant's request, the government provided the defense with two documents which stated that the substance seized from Merkowitz and the substance seized from appellant had been analyzed and found to be pure cocaine. In addition to these produced results, the substance itself was offered to the defense.

Under Rule 16, the court may order the government to inspect any relevant results or reports of scientific tests or experiments made in connection with a

case. A motion made under the discovery rules is within the sound discretion of the trial court and is reviewable only for an abuse of discretion. Hemphill v. United States, 392 F.2d 45, 48 (8th Cir. 1968). The trial court did not abuse its discretion in this case. Our statement in Wolford v. United States, 401 F.2d 331, 333 (10th Cir. 1968), is fully applicable: "[I]t is not contemplated that the government shall prepare the defense in criminal cases. The procedures used were fully explored on cross-examination. The record discloses no prejudicial error in the court's denial to Wolford of the 'step-by-step' procedures used by the government chemists . . . . " Indeed, appellant was acquitted of Count IV of the indictment which charged possession of cocaine with intent to distribute.

### V.

### JURY INSTRUCTIONS

Appellant alleges that error was committed over his timely objection when the trial court, while instructing on intent, stated:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. *So, unless the contrary appears from the evidence*, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by him.

The clause which the defendant finds objectionable is *"So, unless the contrary appears from the evidence* . . . . " The underlined portion is objected to on the basis that it has the effect of shifting the burden of proof.

This instruction has been much criticized and, in some instances, has been held to be clearly erroneous. For a critical analysis of this instruction with citation to cases, see Devitt & Blackmar, *Federal Jury Practice and Instructions* § 13.06 (1970). A number of courts, viewing this instruction in the context of all the given instructions, have determined that it is neither plain nor reversible error. *See, e. g.*, United States v. Releford, 352 F.2d 36, 40 (6th Cir. 1965), cert. denied, 382 U.S. 984, 86 S. Ct. 562, 15 L.Ed.2d 473 (1966); Estes v. United States, 335 F.2d 609, 615–617 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); Sherwin v. United States, 320 F.2d 137, 148–151 (9th Cir. 1963), cert. denied, 375 U.S. 964, 84 S.Ct. 481, 11 L. Ed.2d 420 (1964). In United States v. Woodring, 464 F.2d 1248, 1251 (10th Cir. 1972), this court stated that an instruction practically identical to the one in question should not be given when a specific intent instruction is also given. We there held, however, that in the context presented the giving of it was not plain error.

In the setting which is before us, we do not consider the instruction prejudicial. It was not given in a manner which emphasized the objectionable clause. *See* Forster v. United States, 237 F.2d 617 (9th Cir. 1956). Rather, it was ringed around with charges that "[t]he burden of proof is upon the government to prove each of the essential elements of each of the offenses charged beyond a reasonable doubt"; "[t]he burden is always upon the prosecution to prove both act, or failure to act, and intent beyond a reasonable doubt"; "[i]n this case specific intent must be proven before there can be a conviction, and the Court has mentioned that as one of the essential elements that must be proven." The court very correctly defined specific intent, stating that "[a] person who knowingly does an act which the law forbids, intending with bad purpose, either to disobey or to disregard the law may be found to act with specific intent." The

questioned instruction was then given in regards to proving intent by circumstantial evidence and thereafter the court again repeated the requirements of burden of proof and specific intent.

It is impossible to conceive a jury shifting the burden of proof or being misled as to the necessity for the government to prove specific intent beyond all reasonable doubt.

## VI.

## DEFENDANT'S TENDERED INSTRUCTIONS

The remainder of defense counsel's very thorough argument is addressed to his tendered instructions. These number 155, however only six of these are the subject of specific objection.

A. It is contended that since the trial court mentioned in the presence of the jury that Merkowitz had entered a plea of guilty, it became necessary to caution the jury that they were not to consider this for any purpose. The remark of the court occurred during counsel's cross-examination of the witness Nocenti. Determining that the questions of appellant's counsel were far afield, the court stated that "the tenor of your questions is that this witness induced Mr. Merkowitz to become part of the conspiracy. So what? It is not material. He has plead guilty to being, as you know, and he is not on trial."

■ This colloquy, between the court and appellant's counsel, occurred after the subject of Merkowitz' plea had been introduced and pursued by appellant's counsel. He had previously asked of the witness Merkowitz: "Now you entered your plea in September of this year, isn't that right?" Moreover, during its instructions, the court stated that "[t]he argument, statements and objections made by counsel to the Court or to each other, and the rulings and orders made by the Court, and the re-

marks made by the Court during the trial, and not directed to you, should not be considered by you in arriving at your verdict." In view of this general cautionary instruction and considering the circumstances leading to the court's statement, we conclude that prejudicial error is not established.

■ B. Appellant's contention that the trial court erred in not instructing the jury that the acts of Nocenti were not the acts of a conspirator also lacks merit. When instructing on conspiracy, the trial court spoke of alleged members in the conspiracy. The court did not refer to Nocenti as a member and the indictment did not name him as a conspirator. Hence, we fail to see the necessity for instructing on this.

■ C. Emphasis is also placed on alleged error of the trial court in not giving his requested instruction on entrapment. But this defense was inconsistent with defendant's position that he was not a member of the conspiracy. See United States v. Gibson, 446 F.2d 719 (10th Cir. 1971); Munroe v. United States, 424 F.2d 243 (10th Cir. 1970). Moreover, the court did instruct as to appellant's theory that he believed that the packet he accepted from Nocenti contained money rather than cocaine.

■ D. We have considered appellant's contentions that the trial court erred in refusing its instructions regarding proof of an overt act and the identity of the alleged cocaine. It is sufficient to state that the court's instructions properly covered the law on those issues and it was under no duty to substitute appellant's instructions for its own. Furthermore, appellant was acquitted on Counts II and IV, thus indicating a lack of prejudice with respect to the identity of the alleged cocaine.

The court's charge was adequate. The judgment of the district court is affirmed.