UNITED STATES of America, Plaintiff,

v.

Craig William LINDELOW, Defendant.

Crim. No. 77–81.

United States District Court,
D. Puerto Rico.

Aug. 23, 1977.

José A. Quiles, San Juan, Puerto Rico, for plaintiff.

Robert J. Griswold, San Juan, Puerto Rico, Wm. J. Sheppard, Jacksonville, Fla., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Defendant herein has been charged with two counts. The first of said counts charges him with knowingly and intentionally possessing with the intention to distribute approximately 816.5 grams of cocaine, "a Schedule II Narcotic Controlled Substance" in violation of Title 21, United States Code, Section 841(a)(1). The second count charges defendant with knowingly and intentionally importing into the United States approximately 816.5 grams of cocaine, "a Schedule II Narcotic Controlled Substance", in violation of Title 21, United States Code, Section 952(a).

Defendant has filed several motions in the instant case. We will now consider them in chronological order.

I. *First Motion to Dismiss for Failure to Comply with the Jury Selection and Service Act of 1968.*

Defendant challenges the provision in the Amended Plan for the Random Selection of Grand and Petit Jurors pursuant to the Jury Selection and Service Act of 1968, as amended of the United States District Court for the District of Puerto Rico, which allows "a woman with custody and care of a child or children under five years of age" to be excused from grand jury service upon request. He alleges that this provision fails to insure his right to a grand jury selected at random from a fair cross-section of the community.

Title 28, United States Code, Section 1863(b)(5), allows district courts' plans to excuse from jury service groups of people or occupational classes for which attendance would be an extreme inconvenience or undue hardship. See also: House Judiciary Committee Report No. 1076, U.S.Code Cong. & Admin.News 1968, pp. 1792, 1800.

Besides the fact that defendant has failed to show that the excuse granted women with children, if any has been given, results in a substantial underrepresentation of women, the constitutionality of similar provisions in other districts' plan has been already upheld. See: *United States v. Eskew*, 460 F.2d 1028 (9th Cir., 1972); *United States v. Briggs*, 366 F.Supp. 1356, 1363 (N.D.Fla., 1973); *United States v. Armsbury*, 408 F.Supp. 1130, 1144 (D.Oregon, 1976).

Defendant's reliance in the case of *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) is misplaced. The *Taylor* case involved a provision which auto-

matically excluded *all* women because of sex from jury service unless she affirmatively requests to be subject to jury service. The Supreme Court stated in this case that:

> "The States are free to grant exemption from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. (citations omitted). It would not appear that such exemptions would pose substantial threats that the remaining pool of jurors would not be representative of the community." *Ibid*, at p. 534, 95 S.Ct. at p. 700.

Therefore, defendant's motion to dismiss is denied.

II. *Second Motion to Dismiss Because of the Unconstitutionality of Schedule II of Title 21, United States Code, Section 812(c).*

█ In his second motion to dismiss the indictment defendant alleges that the charges are invalid because the underlying criminal statute, Schedule II of Title 21, United States Code, Section 812(c), is unconstitutional due to violations of due process and equal protection. Specifically, it is urged that said legislation is arbitrary and capricious in that cocaine is not, as a matter of scientific or medical fact, a drug or substance which has characteristics or properties which could validly justify the findings necessary in order for it to be classified as a narcotic in Schedule II of Title 21, United States Code, Section 812(c). The constitutional attack to that section is further expanded and defendant alleges that said legislation invalidly interferes with private activities and personal rights without there being any valid legislative purpose or objective, and that insofar as said legislation involves cocaine, the statutory penalties there prescribed are unconstitutional in that the penalties are violative of the prohibitions of the Eighth Amendment of the United States Constitution against the imposition of cruel and unusual punishment.

ANALYSIS

The Comprehensive Drug Abuse Prevention and Control Act of 1970, Title 21, United States Code, Section 801 *et seq.*, establishes five schedules of controlled substances. The substances are grouped according to their potential for abuse, their medical usefulness, and the consequences of their use, Title 21, United States Code, Section 812. Cocaine has been classified as a Schedule II substance for regulatory purposes based upon the aforementioned criteria.

Controlled substances listed in Schedules I and II of the 1970 Drug Act designated as narcotic drugs are grouped together under Title 21, United States Code, Section 841(b)(1)(A) for penalty purposes. Cocaine's inclusion within the "narcotic drug" penalty classification of Section 841(b)(1)(A) subjects a person upon conviction to a maximum of 15 years imprisonment and $25,000.00 plus a period of special parole. By contrast, those drugs in Schedule I and II which are considered non-narcotic under Section 841(b)(1)(B), carry a maximum of only 5 years imprisonment and $15,000.00 fine.

Defendant alleges that cocaine is not a narcotic in the pharmacological sense and that it does not have the known properties and effects of a narcotic drug and that Congress' failure to so classify cocaine within Section 841(b)(1)(B) resulted in a violation of defendant's right to due process because there exists no actual rationale underlying the present penalty classification and that the more severe penalty for cocaine in relation to other drugs violates the guarantees of equal protection and freedom from cruel and unusual punishment. Based on the above contentions defendant has moved for the dismissal of the indictment filed in the present case.

Although defendant's contentions in this case are not to be lightly taken, the First Circuit has already ruled authoritatively on the matter and we are bound to follow the same.

In *United States v. Foss*, 501 F.2d 522 (1 CA, 1974) the Court faced the same arguments raised by defendant herein, albeit in the context of a revision of the sentences imposed in that case. The First Circuit Court of Appeals in affirming the imposed sentences faced the misclassification argument and held:

". . . Cocaine was made a Schedule II controlled substance by Act of Congress. Title 21, United States Code, Section 812(c) II (a)(4). It may be removed but only by administrative procedures spelled out in the legislation. Title 21, United States Code, Section 811(a)(2). The criminalization of cocaine reflects a societal policy binding upon the courts; the district court was neither bound nor authorized to delve into the policies underlying the drug laws except as might be appropriate to exercise fairly its individual sentencing discretion." *Id* at 530.

Subsequent to *Foss*, supra, two other district courts within the First Circuit have considered the same arguments and ruled contrary to defendant's contentions. In *United States v. Hobbs*, 392 F.Supp. 444 (1975) the Honorable Judge Tauro of the United States District Court for the District of Massachusetts held the following:

"[4] The Government does not challenge the initial premise of defendants' argument—that cocaine is a stimulant not a narcotic. 'The issue then . . . is whether Congress can rationally classify cocaine, a non-narcotic central nervous stimulant, as a narcotic for penalty and regulatory purposes.' *United States v. Brookins* [D.C.], 383 F.Supp. [1212] at 1214. Whether couched in due process or in equal protection terms, the appropriate standard of review for this challenge, is the minimum rationality test articulated in *United States v. Carolene Products Co.*, 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). 'Whether any state of facts either known or which could reasonably be assumed affords support for (the classification).' See *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1974). Defendants' argument that a higher standard of review is

required because their liberty is at stake is without merit. Even if classified as a non-narcotic they would still be subject to loss of liberty. Since penal classification are tested under the rational basis test, the argument must be rejected. *United States v. Brookins*, 383 F.Supp. at 1216.

In classifying cocaine as a narcotic drug, Title 21, United States Code, Section 802(16), Congress was not required to accept the pharmacological definition of a narcotic. Thus, the numerous affidavits submitted by defendants' experts are of limited relevance since they tend to establish only that cocaine is not a narcotic in pharmacological classifications. The sole question presented is whether there is some rational basis for the statutory classification of cocaine as a narcotic. In *United States v. Brookins*, the court pointed out that there was some evidence that Congress was aware of the discrepancy between the legal and pharmacological classifications of cocaine at the time of the hearings immediately preceding the 1970 Act, but retained the 'narcotic' classification of cocaine for control and penalty purposes because of 'its established capacity as a dangerous drug, (and) its long association with heroin in the illicit market.' 383 F.Supp. at 1216.

There are any number of rational bases which can be assumed under the *Carolene* test in upholding the congressional classification of cocaine as a narcotic for penalty purposes. Congress may have concluded that since the price of cocaine on the illicit market is extremely high, it is more likely to attract major drug traffickers or provide a source of revenue for organized crime. Congress may have concluded that a high-profit enterprise must also be treated as a high-risk enterprise in order to effectively deter criminal activity in this market. Congress may have retained the 'narcotics' classification because of the paucity of scientific data concerning the use and effect of cocaine, or because it is used by drug abusers either alone or in combination with heroin, or in furtherance of treaty obliga-

tions. See Title 21, United States Code, Section 801(7). These considerations, either singly or in combination, provide an ample foundation for finding that the congressional classification of cocaine as a narcotic has a rational basis.

To the extent that the defendants have argued for reclassification of cocaine on the basis of newly-discovered scientific evidence, their argument has been presented to the wrong branch of Government. Congress has the power to reclassify cocaine. Congress has delegated that power to the Attorney General, Title 21, United States Code, Section 811(a)(1). The existence of an established reclassification mechanism underscores the impropriety of this court taking such action. See *United States v. Foss*, 501 F.2d 522, 530 (1st Cir., 1974). (Id. at 446–47)

In *United States v. Di Laura*, 394 F.Supp. 770 (1974), the Honorable Judge Murray of the United States District Court for the District of Massachusetts when faced with arguments identical to those advanced here stated:

"... Cocaine is a Schedule II controlled substance, in that Congress has found that (1) the drug or other substance has a high potential for abuse, (2) it has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and (3) abuse thereof may lead to severe psychological or physical dependence. Title 21, United States Code, Section 812(b)(2).

(6, 7) 1. There is no merit to defendant's contention that the classification of cocaine within the definition of the term "narcotic drug", Title 21, United States Code, Section 802(16), is arbitrary and irrational. Conceding that the statutory definition is broader than the dictionary definition, Congress is not required to follow the latter in applying the term to a number of different classes of drugs for purposes of legal control. See The Challenge of Crime in a Free Society, 212 (1967).

(8) 2. The affidavits demonstrate that some members of the medical profession, and other persons of professional competence, disagree with the findings of Congress about cocaine use, and the court assumes the good faith of those who have submitted the affidavits. It is common knowledge, however, that it is not unusual for members of the medical profession to disagree among themselves about the role that drugs of various classes play as causative and contributing factors in antisocial behavior and the commission of criminal acts. Simultaneously, there exists a respectable body of opinion held by pharmacologists, and other competent professionals, as to the effects of cocaine use, and the results of cocaine misuse and abuse as related to personality and social factors. Insofar as there exist facts which reasonably support findings and conclusions that cocaine use leads to effects which pose serious problems for the community, the measures chosen by Congress to deal with the causes and effects reflect a societal policy which the courts are bound to observe. *Marshall v. United States* [414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618], supra, cf. *United States v. Foss*, 501 F.2d 522, 530, (1st Cir., 1974)."

These and other related cases were ratified very recently by the First Circuit Court of Appeals in *United States v. Wheaton*, 557 F.2d 275 (1977). There the court stated:

"... It is not argued that the court was not empowered to sentence as it did, and the cases are clear that the underlying statute's attaching of criminal penalties to dealings in cocaine is unassailable because, whether or not cocaine is properly classified pharmacologically in the statute, there is a rational basis for the criminalization of dealings in cocaine ..." [Id. at p. 277]

Defendant herein does not quarrel with the existence of the above cited decisions. However, he very ably argues that the same are cases in which the classification of cocaine as a Schedule II narcotic was upheld under the "rational basis" test of *United States v. Carolene Products Co.*, 304 U.S.

144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), and that this is no longer law.

The above cited portion of the Court's opinion in *United States v. Hobbs,* gives an example of how the "rational basis" test of *Carolene* has been applied to uphold the present classification of cocaine, the courts have also reasoned that such rational basis existed because even if cocaine were to be classified as a non-narcotic drug, loss of liberty would still remain possible under Title 21, United States Code, Section 841(b)(1)(B). See: *United States v. Smaldone,* 484 F.2d 311 (10 CA, 1973), cert. den. 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974).

Defendant argues that the fact that the "erroneous" classification of cocaine presently leads to the imposition of a longer term of imprisonment has serious constitutional consequences. When facing the issue of whether a denial of liberty for a greater duration violates the due process clause of the Fifth Amendment the courts have concluded that the duration of one's loss of liberty is subject to the rational relationship test mentioned above. *United States v. Brookins,* 383 F.Supp. 1212 (D.N.J., 1974), aff'd 524 F.2d 1404 (3 CA, 1975); *Duffy v. Wells,* 201 F.2d 503 (9 CA, 1953) cert. den. 346 U.S. 861, 74 S.Ct. 74, 98 L.Ed. 373 (1953); *United States v. Russell,* 285 F.Supp. 765 (E.D.Pa., 1968), aff'd 406 F.2d 774 (3 CA, 1969).

Defendant's contention is that "[i]nsofar as *Duffy* and *Russell* stand for the proposition that the duration of one's loss of liberty is subject only to the rational relationship test, these cases are no longer good law." In support of this argument the Supreme Court decision in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) is cited to the effect that:

"[a]t the least, due process requires that the nature and duration of commitment bear some *reasonable relation* to the purpose for which the individual is committed."

We begin by noting that in *Jackson v. Indiana,* supra, what was at stake was an order of *indefinite* commitment, and the Supreme Court there found a violation of appellant's rights of *equal protection* because serious discrepancies resulted from subjecting a defendant under several Indiana laws dealing with the mentally ill or feeble minded. Under one statute a *definite* period of commitment ensued while under the other he could be committed for life.

We have found that the *Jackson* rule has been applied mainly in areas of equal protection, e.g. *Boraas v. Village of Belle Terre,* 476 F.2d 806 (2 Cir., 1973) (zoning classification barring non-family dwellers) or indefinite commitments, e.g. *Waite v. Jacobs,* 154 U.S.App.D.C. 281, 475 F.2d 392 (1975), where a fundamental right has been found to be at stake.

We have not found authority for the proposition that a higher term of imprisonment puts at stake a fundamental right, in this case liberty of the person from penal coercion, so as to compel the courts to apply a "strict scrutiny" standard or reasonable relation. We think that we are here faced with a problem of penal classification. Even if cocaine were classified as a non-narcotic, defendant would still be subject to a loss of liberty for a violation of Title 21, United States Code, Section 841(b)(1)(B), such being the case we think the rational basis test would apply. In *United States v. Brookins,* 383 F.Supp. 1212 (1974) aff'd 524 F.2d 1404 (3 CA, 1975) a case subsequent to the Supreme Court's holding in *Jackson,* the court reached this same conclusion, and upheld the rationality test in said context, *Id.* at 1216.

The above was best stated in *United States v. Castro,* 401 F.Supp. 120 (D.C., 1975) when the court rejected a very similar contention:

"The defendant has not identified any comparable personal right at issue here. We are not dealing with the defendant's loss of liberty, for if cocaine was classified as a non-narcotic as defendant suggests, he would still be subject to criminal sanctions including imprisonment, for violation of Title 21, United States Code, Section 841(b)(1)(B). Thus, apart from

the generalizations surrounding the due process and cruel and unusual punishment proscriptions, the only right arguably referred to by the defendant is the right to be free from a harsher penalty than is imposed for medically similar substances. If such a right exists, it is clearly not a "fundamental" right, and the defendant has offered no case which has so held. Noticeably missing are any drug-prosecution cases which might support defendant's position. Absent a fundamental right at stake, there is no basis upon which to apply the actual rationality test, and accordingly defendant's argument must fail.

By contrast, the courts have consistently dealt with challenges to penal classifications under the rational basis test. See, *Duffy v. Wells,* 201 F.2d 503 (9 CA, 1953), cert. den. 346 U.S. 861 [74 S.Ct. 74, 98 L.Ed. 373] . . . (1953); *United States v. Russell,* 285 F.Supp. 765 (E.D. Pa., 1968), aff'd 406 F.2d 774 (3 CA, 1969). Recognizing the wide latitude afforded Congress in making statutory classifications affecting the public health, safety, and welfare, they have generally upheld statutes upon a showing of some rational relationship to a legislative purpose. *Williamson v. Lee Optical, Inc.,* 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] . . . (1955); *United States v. Wheatherford,* 471 F.2d 47 (7 CA, 1972). This is particularly so in those cases involving drug violations, without exception, in prosecutions where the defendant has challenged the marijuana laws as being based on misinformation and, therefore, unreasonably classifying marijuana in Schedule I with heroin, or for imposing greater penalties than for allegedly more dangerous drugs, the challenges have all been determined under the rational basis test . . . as set forth, supra, sufficient minimum rationality for the penalty classification does exist in the instant case to meet Fifth Amendment requirements. Nor do we find that the disparity in penalties offends the Eighth Amendment as the statute "does not exhibit an inclination to

visit upon (the) offender(s) a penalty so out of proportion to the crime committed that it shocks a balanced sense of justice." *Halprin v. United States,* 295 F.2d 458 at 460–61 (9 CA, 1961). [Id. at 126–127].

We concur with the findings of the various federal district courts which we have here cited at great length. We likewise think that resolution of the issues here raised, which are not to be taken lightly, are more properly incumbent with the legislative or the executive branches and not in the courts.

The Supreme Court has chartered a path to be carefully tread in these circumstances:

"When Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious to rewrite legislation even assuming, arguendo, that judges with more direct exposure to the problem might make wiser choices.[1]

There being a corrective mechanism in the Act for dealing with challenges to the improper classification of drugs in the different schedules, judicial deference is mandated. Section 811 of the Act provides for action by the Attorney General for the transfer of substances between schedules, after an evaluation on scientific and medical questions has been obtained from the Secretary of Health, Education and Welfare.

We cannot refrain from stating our hope that the route provided in Section 811, supra, will be pursued to obtain an evaluation of the impact of cocaine as presented by the testimony and documentary evidence considered by the various courts, federal and state, in the cases cited by defendant in his excellent brief and those cited in this opinion. However, at the present moment, defendant's motion to dismiss must be denied.

III. *Application for Services other than Counsel.*

■ Defendant has filed an application for services of expert other than counsel

---

1. *Marshall v. United States,* 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974).

pursuant to the provisions of Title 18, United States Code, Section 3006A(e)(1). It is stated in support of such application that said services are necessary to establish that Congress has misclassified cocaine for penalty purposes with narcotic drugs. We have already considered this defense, supra, by way of a motion to dismiss, and have concluded that such evidence and testimony is best presented to the legislative or executive branches. As the law now reads, it meets the necessary tests of constitutionality, and the services here applied to will be to no avail in advancing a defense in the present case, because said argument cannot be considered by this Court. We urge defendant to recur to the appropriate branches of Government with said contentions.

Wherefore, in view of all of the above, we rule as follows: (1) defendant's motion to dismiss for failure to comply with the Jury Selection and Service Act of 1968 is hereby denied; (2) defendant's motion to dismiss is hereby denied; (3) defendant's application for services other than counsel is likewise denied.

IT IS SO ORDERED.