Charles Edward JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 13593.

District of Columbia Court of Appeals.

Submitted Jan. 10, 1979.

Decided May 2, 1979.

Jeffrey Marshall Albert, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell, Charles W. Brooks, Pamela M. Sayad, and Gordon C. Rhea, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KERN and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

PER CURIAM:

Appellant was convicted of possession of methylphenidate (Ritalin) in violation of the District of Columbia Dangerous Drug Act (DDA), D.C.Code 1973, § 33–701 et seq. He admits possession of the drug but argues that he was convicted under the wrong Act. His argument, as we understand it, is that he should have been charged under the Federal Controlled Substance Act (CSA), 21 U.S.C. § 801 et seq. (1976).

DDA, besides naming certain specific drugs, includes other drugs or compounds found and declared by the District of Columbia Council to have certain specified effects; but the Act provides that the term "dangerous drug" shall not include "any drug the manufacture or delivery of which is regulated by Federal narcotic drug laws, or by the narcotic drug laws of the District of Columbia." D.C.Code 1973, § 33–701(1)(C).

The District of Columbia Council by Regulation 74–49, incorporated Ritalin and certain other drugs into DDA. It is appellant's argument that the inclusion of Ritalin in DDA was beyond the power of the Council because that drug was specifically regulated by CSA, 21 U.S.C. § 812, Schedule III(a)(4) (1976). Appellant argues that CSA is a federal narcotic law and as it specifically regulated Ritalin, the District of Columbia Council lacked authority to include it in DDA.

It is clear that CSA regulates the manufacture and delivery of certain substances classified by it as narcotics [1] but it is equally clear that it regulates the manufacture and delivery of certain substances not classified as narcotics.[2] Ritalin, the drug in question, is specifically listed in Schedule III(a)(4) as a drug "having a stimulant effect on the central nervous system." Thus, while it may be argued that the manufacture and delivery of Ritalin is regulated by a federal narcotic law, it may equally be argued that Ritalin is regulated by a federal dangerous drug or controlled substance law.

Although the DDA does not define "Federal narcotic drug laws", Congress, in enacting the Uniform Narcotic Drug Act for the District of Columbia, defined "Federal narcotic laws" to mean "the laws of the United States and the regulations promulgated thereunder relating to opium, coca leaves, cannabis, and other narcotic drugs." D.C. Code 1973, § 33–401(o).

▮ Our conclusion is that Congress in enacting DDA and forbidding the District of Columbia to include in the Act "any drug the manufacture or delivery of which is regulated by Federal narcotic drug laws" intended that the District should not include in the DDA any drug which federal law or regulations designated a "narcotic

drug." [3] Thus, CSA is a federal narcotics drug law insofar as it regulates substances classified as narcotics, but it is not a federal narcotics drug law in its regulation of drugs not classified as narcotic. We hold that as CSA does not classify Ritalin as a narcotic drug, the District of Columbia could properly include Ritalin in DDA.

*Affirmed.*

---

**1.** *See* 21 U.S.C. § 802(16) (1976) for definition of its term "narcotic drug."

**2.** *See, e. g.,* 21 U.S.C. § 802(9) for definition of "depressant or stimulant substance."

**3.** "Narcotics", as used in federal and state laws, is not a scientific term. *State v. Ringo,* 5

Conn.Cir. 134, 246 A.2d 208 (1968). And, although cocaine is not a true narcotic, it may be classified as such. *United States v. Brookins,* 383 F.Supp. 1212 (D.N.J.1974), *aff'd* 524 F.2d 1401 (1975); *United States v. Lindelow,* 435 F.Supp. 367 (D.P.R.1977).