**UNITED STATES of America**
v.
**Lawrence BROOKINS, Defendant.**

**UNITED STATES of America**
v.
**Andres GUECHE, Defendant.**
**Crim. Nos. 577–73, 74–3.**

United States District Court,
D. New Jersey.

Oct. 29, 1974.

Jonathan L. Goldstein, U. S. Atty., by John J. Barry, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Roger A. Lowenstein, Federal Public Defender, Newark, N. J., for defendants.

OPINION

LACEY, District Judge.

Before the Court are identical motions by defendants Lawrence Brookins, Cr. No. 577–73, and Andres Gueche, Cr. No. 74–3, for dismissal of their indictments on the grounds that the statute underlying the indictments, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. Sec. 801 et seq. (hereinafter the 1970 Act), is unconstitutional as it applies to cocaine.

Defendants, in connection with their motions, seek an evidentiary hearing. In view of the affidavits submitted, and in light of the issues raised, no evidentiary hearing is required, *see* United States v. Smaldone, 484 F.2d 311 (1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974), and the motions to dismiss are denied.

Defendant Brookins is charged in a one-count indictment with having knowingly distributed 16.19 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Defendant Gueche is charged in a two-count indictment with having distributed on one occasion 1.6 grams of cocaine, and, on another occasion, 111 grams of cocaine, also in violation of 21 U.S.C. Sec. 841(a)(1).

The defendants contend that the statutory maximum penalty provided for their offenses, a term of imprisonment of not more than 15 years and a fine of not more than $25,000, or both, *see* 21 U.S.C. Sec. 841(b)(1)(A), is violative of their due process rights as guaranteed by the Fifth Amendment of the Constitution. More specifically, defendants allege that the classification of cocaine as a narcotic drug, *see* 21 U.S.C. Sec.

802(16), is arbitrary, irrational and without basis in fact. As a result, they argue, the penalty provisions of 21 U.S. C. Sec. 841(b)(1)(A), as they apply to schedule II *narcotic* substances, which include cocaine, *see* 21 U.S.C. Sec. 812(c), unconstitutionally deprive them of liberty without due process. While conceding that cocaine is properly classified as a schedule II substance, *see* 21 U.S.C. Sec. 812(b)(2) (Defts' Reply Brief, at 11, 12), defendants urge that the maximum potential penalty for the distribution of cocaine, if properly defined and classified as a non-narcotic substance, would be 5 years imprisonment and a fine of $15,000, *see* 21 U.S. C. Sec. 841(b)(1)(B).

Further, the defendants advance an equal protection claim through the Fifth Amendment due process clause, *see* Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), alleging that since cocaine is pharmacologically similar in effect to methamphetamine, a schedule II non-narcotic, 21 U.S.C. Sec. 812(c), and the amphetamines, generally classified as schedule III substances, 21 U.S.C. Sec. 812(c), the sale of which substances exposes defendants to a maximum sentence of 5 years imprisonment and $15,000 fine (*see* 21 U.S.C. Sec. 841(b)(1)(B)), Congress has discriminated against cocaine sellers by prescribing an additional 10 years and $10,000 fine for violations of 21 U.S.C. Sec. 841(a)(1), thus treating like offenders differently.

Finally, the defendants allege that the 1970 Act, non-discriminatory on its face, is racially discriminatory in application. *See* Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). They argue that the Harrison Narcotics Act of 1914 was racially motivated and that Congress, by defining cocaine as a narcotic in 1922, *see* The Narcotic Drugs Import and Export Act (42 Stat. 596), and redefining cocaine as a narcotic in the 1970 Act (which Act the defendants term a careful, thorough and commenda-

ble reorganization of the laws relating to controlled substances), without questioning the basis for that definition, continued to perpetuate the "racial myths" of bygone days.

Preliminarily, it should be noted that defendants' motions are premature and theoretically not ripe for adjudication since the defendants, presumed innocent, have not at this point suffered any concrete exposure to the penalties of 21 U. S.C. Sec. 841(b)(1)(A), *see* Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947), and are theoretically without standing, *see* United States v. Thorne, No. 8349, (D.C. Cir. Aug. 7, 1974), slip op. at 6, since the challenged penalties have not and may never be imposed on them. However, in view of the action I take, I will treat the defendants as having requisite standing and the motions as properly ripe for adjudication.

Defendants' attack on the classification of cocaine as a narcotic, with the aforementioned penalty ramifications for the sale thereof, is based on the contentions that "no reputable physician in the country would testify that cocaine is a narcotic drug" and "cocaine (does not) carry with it the potential for social harm which is inherent in the true narcotic drug." (Defts' Brief, at 1) The defendants have submitted a series of affidavits in support of their contentions. The government in its brief and supporting affidavits, while conceding that cocaine is not a true narcotic in the strict medical or pharmacological sense of the term, disputes cocaine's potential for societal harm.

■ The issue then, as this Court perceives it, is whether Congress can rationally classify cocaine, a non-narcotic central nervous system stimulant, as a narcotic for penalty and regulatory purposes. In other words, must the legal or congressional classification of cocaine as a narcotic mirror its medical classification?

The appropriate standard to be applied in determining the issue is suc-

cinctly set forth in United States v. Carolene Products Co., 304 U.S. 144, 58 S. Ct. 778, 82 L.Ed. 1234 (1938), wherein it is stated (304 U.S. at 153, 154, 58 S. Ct. 778, 784):

> Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. . . . But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either shown or which could reasonably be assumed affords support for it.

*Accord, see* United States v. Smaldone, 484 F.2d 311 (1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed. 469 (1974). In *Smaldone,* the district court had denied without an evidentiary hearing defendant's motion to dismiss the indictment on the ground that the statutory classification of cocaine as a narcotic was arbitrary, capricious and lacking in reason. Affirming, the Court of Appeals stated on the issue of congressional classification: "The judicial approach to this kind of question is that the classification will be upheld if any facts justify it." 484 F.2d at 320.

■ As this Court has previously noted in its unpublished opinion in United States v. Hallock, No. 429–72 (D.N.J. June 26, 1973), aff'd, 491 F.2d 751 (3d Cir. 1973), courts must act with restraint in reviewing congressional judgment. "The challenged legislative act will be presumed valid 'unless it is shown that the statute in question bears no rational relationship to a legitimate legislative purpose.'" *Id.,* at 4. *See also* United States v. Brummage, 377 F. Supp. 144, 148 (E.D. N.Y. 1974). The language in United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), that:

the process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it. 380 U.S., at 67, 85 S. Ct., at 757.

is as appropriate to the matter *sub judice* as it was to *Hallock.* Thus the defendants bear a heavy burden in attempting to demonstrate the lack of a rational basis for the cocaine classification. *See* United States v. Thorne, *supra,* slip op. at 4. This burden they have not sustained.

I need not look beyond defendants' affidavits to discern that it cannot be stated that the classification of cocaine as a narcotic for penalty purpose is without a rational basis. The affidavit of Dr. Byck, whom defendants single out as a highly qualified expert, indicates that the study of the use and effect of cocaine on man is far from settled. In fact, Dr. Byck is the recipient of the first major government grant for the study of the effects of cocaine on man. (Defts' Reply to Government's Affidavits, at 1). In his affidavit Dr. Byck recognizes that there is a probable increase in cocaine use in the United States today, that a fairly high percentage of drug users use cocaine at some time or another, and that cocaine is extremely euphorogenic. It is also noted that his conclusions as to the potential for societal harm, assuming that I should consider a medical view in such matters, are at odds with those embodied in the affidavits submitted by the government.

■ A review of all affidavits submitted by the parties leads me to conclude that there is an honest scientific difference of opinion concerning the effects of cocaine. That difference, which indicates, at least, that the classification of cocaine as a narcotic for penalty purposes is "debatable," mandates the application of the *Carolene* test, *supra.* A

holding that a legislative enactment is invalid cannot rest upon a judicial determination of a debatable medical issue. United States v. Thorne, *supra,* at 4.

It is of interest to note at this juncture that the affidavit of Dr. Seevers, submitted by the government and unassailed on this point by defendants' affidavits, indicates that Congress was aware of the discrepancy between the legal and pharmacological classifications of cocaine at the time of the hearings immediately preceding the 1970 Act, but retained the "narcotic" classification of cocaine for control and penalty purposes because of "its established capacity as a dangerous drug, (and) its long association with heroin in the illicit market" (Seevers' affidavit, at 2).

Whether Congress retained the "narcotics" classification because of the paucity of scientific data concerning the use and effect of cocaine, or because it is used by drug abusers either alone or in combination with heroin, or in furtherance of treaty obligations, *see* 21 U.S.C. Sec. 801(7), there are any number of rational bases which, if now known, can be assumed under the *Carolene* test in upholding the congressional classification of cocaine as a narcotic for penalty purposes.

Whether there will be in the future lessening of the penalties for the sale of cocaine, if defendants' factual contentions are borne out, is a problem to be wrestled with by Congress or by the Attorney General under the appropriate procedures of 21 U.S.C. Sec. 811.

■ Besides the rational basis test, defendants would have the Court carefully scrutinize the 1970 Act to search for a compelling governmental interest because a fundamental and "primary" right is involved: "liberty of the person from physical penal coercion for a possible 10 years in excess of the period faced by the favored class, amphetamine abusers" (Defts' Brief, at 33, 34). Defendants readily admit that if cocaine were classified as a non-narcotic, they would still be subject to a loss of liberty for a violation of 21 U.S.C. Sec. 841(b)(1)(B). Since penal classifications are uniformly subjected to a rational basis test, *see* Duffy v. Wells, 201 F.2d 503 (9th Cir.), cert. denied, 346 U.S. 861, 74 S.Ct. 74, 98 L.Ed. 373 (1953); United States v. Russell, 285 F.Supp. 765 (E.D. Pa.1968), aff'd, 406 F.2d 774 (3d Cir. 1969), defendants' contention must be rejected.

■ Defendants' equal protection argument, that there is no basis for treating cocaine sellers differently from amphetamine sellers for penalty purposes, is equally without merit and must be rejected. As previously noted, no fundamental rights of the defendants are involved. Thus Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), upon which defendants heavily rely, is inapposite.

■ The concept of equal protection, as embodied in the due process clause of the Fifth Amendment, in areas not involving fundamental rights, does not require that all persons be dealt with identically, but that there be some "rational basis" for the statutory distinctions made, McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

■ As stated with respect to defendants' due process claim, discussed *supra,* a court should not set aside a law on the ground that it is allegedly of a discriminatory nature where any state of facts can reasonably be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In that regard,

(w)hen Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation, even assuming arguendo, that judges with more direct exposure to the problem might make wiser choices. Marshall v. United States, 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974).

Further, there is nothing that compels Congress to deal with the entire field, in all its ramifications and with all its refinements and possible exceptions at one time. *See* Dandridge v. Williams, 397 U.S. 471, 486, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Given the broad classification powers of Congress, Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1962), and the controversial scientific nature of the issue, Marshall v. United States, *supra*, the Court must reiterate that it cannot deem the differences in classification between cocaine and amphetamines for penalty purposes, as set forth in the 1970 Act, as irrational.

An additional ground for upholding 21 U.S.C. Sec. 801, et seq., may also be found in the reasonableness of the 1970 Act as a whole. It applies a flexible approach to the categorization and classification of alleged controlled substances, 21 U.S.C. Sec. 811(a), based, *inter alia*, on the state of current scientific knowledge regarding drugs and other substances. 21 U.S.C. Sec. 811(c). The question whether a substance belongs in schedule II or schedule III, or in any schedule at all, with the attached penal ramifications, *see* 21 U.S.C. Sec. 841 (b)(1)(A), (B), "calls for fine distinctions, but the statutory procedure at least offers the means for producing a thorough factual record upon which to base an informed judgment." United States v. Kiffer, 477 F.2d 349 (2d Cir.), cert. denied, 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973). This procedure, as is indicated in *Kiffer*, is the "antithesis of irrationality."

Defendants' third contention, that the 1970 Act as it relates to cocaine is racially discriminatory in application, is without basis. There is not the least showing, even assuming *arguendo* that the passage of the Harrison Act in 1914 was racially motivated, that the 1970 Act which supersedes the 1914 Act was based on any such invidious motives or prejudices. Further, it is not contended

nor is there a showing that the 1970 Act is directed at or enforced mainly against racial minorities. *Cf.* Yick Wo v. Hopkins, *supra*. Therefore, the contention must be rejected.