**UNITED STATES of America**

**v.**

**Jose CASTRO.**

**No. 74 CR 556.**

United States District Court, N. D. Illinois, E. D.

Feb. 12, 1975.

James M. Thompson, U. S. Atty., James M. Breen, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Thomas D. Decker, Federal Defender Program, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The defendant herein, Jose Castro, is charged with distribution of 19 grams of cocaine in violation of 21 U.S.C. § 841 (a)(1). The defendant has moved to dismiss the indictment against him contending that cocaine has been arbitrarily and irrationally classified as a narcotic drug for penalty purposes, thereby exposing him to a harsher maximum penalty than prescribed for medically comparable drugs listed in 21 U.S.C. § 841 (b)(1)(B), in violation of the constitutional guarantees to due process, equal protection, and freedom from cruel and unusual punishment. While we find defendant's challenge to the pharmacological basis of Congress' classification of cocaine as a narcotic drug to be persuasive, we do not find that the penalty classification is so devoid of rationality, or so offensive to the concept of equal justice as to warrant our overturning the statute. For the reasons set forth hereinafter, defendant's motion to dismiss will be denied.

I

The Comprehensive Drug Abuse Prevention and Control Act of 1970 (1970 Drug Act), 21 U.S.C. § 801 et seq., establishes five schedules of controlled substances. The substances are grouped according to their potential for abuse, their medical usefulness, and the consequences of their use, 21 U.S.C. § 812. Cocaine is classified as a Schedule II substance for regulatory purposes based upon the following criteria:

(2) Schedule II.—

(A) The drug or other substance has a high potential for abuse.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

(C) Abuse of the drug or other substance may lead to severe psychological or physical dependence.

Those controlled substances listed in Schedules I and II of the 1970 Drug Act designated as narcotic drugs are grouped together under 21 U.S.C. § 841 (b)(1)(A) for penalty purposes. The statutory definition of a narcotic drug is contained in 21 U.S.C. § 802(16), which provides in relevant part:

The term "narcotic drug" means any of the following, whether produced directly or indirectly by the extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(A) Opium, coca leaves, and opiates.

(B) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates.

(C) A substance . . . which is chemically identical with any of the substances referred to in clause (A) or (B).

Such term does not include decocainized coca leaves or extracts of coca

leaves, which extracts do not contain cocaine or ecgonine.

Inclusion within the "narcotic drug" penalty classification of § 841(b)(1)(A) subjects a person upon conviction to a maximum of 15 years imprisonment and $25,000 fine plus a period of special parole. By contrast, those drugs in Schedules I and II which are considered non-narcotic, under § 841(b)(1)(B), carry a maximum of only 5 years imprisonment and $15,000 fine.

The defendant contends that, since cocaine is not a narcotic in the pharmacological sense, nor does it have the known properties and effects of a narcotic drug, it should have been classified by Congress along with substances exhibiting like characteristics as a non-narcotic drug for penalty purposes. Congress' failure to so classify cocaine within § 841(b)(1)(B) is alleged to be the result of misinformation, unsupported conclusions, and the perpetration of outdated drug mythology, none of which could provide a valid factual basis for the penalty system.

Since Congress allegedly acted upon insufficient or erroneous information, the defendant claims that there exists no actual rationality underlying the present penalty classification, violating his right to due process. He additionally claims that the more severe penalty for cocaine in relation to other drugs, which have lesser penalties although arguably posing more potential dangers, is arbitrary and discriminatory, violating the guaranties of equal protection and freedom from cruel and unusual punishment.

██ In support of his misclassification argument, the defendant has submitted numerous affidavits from medical experts, excerpts from pharmacological texts, and articles from medical journals. These materials appear to confirm, and even the government tends to agree, that cocaine is not a narcotic in a strict medical sense. The term narcotic is derived from the word narcosis, or in the original Greek, nar-

kotikon, which means numbness or sleep. Any drug which produces sleep or drowsiness, has traditionally been defined as a narcotic. Drugs stemming from the opiate family, especially opium, morphine, heroin, and a variety of synthetic drugs which act as a depressant upon the central nervous system are narcotic drugs. In terms of effects, narcotics such as the opiates are generally addictive, running rapidly to tolerances, and causing severe physical withdrawal symptoms upon termination.

█ Cocaine, on the other hand, does not resemble the opiates in any pharmacological sense, but is universally identified with amphetamines. Far from being a depressant, cocaine is generally considered as an anti-fatigue, anti-soporific stimulant often used to stimulate alertness or euphoria. Its effects upon respiration, the central nervous system, and the gastro-intestinal tract, are different from those of narcotics. Cocaine is not addictive, but may be habituating much as marijuana, cigarette smoking, etc. Heavy users do not build up tolerances requiring greater dosages or more frequent usage. Nor does termination appear to cause withdrawal symptoms, although some older pharmacological texts and government affiants suggest possible psychological dependence stemming from the so-called cocaine psychosis with formication and paranoia in addition to depression. Defense experts, however, have discounted such reactions as either highly unusual, or the unsubstantiated product of drug mythology.

As explained by Dr. Norman E. Zinberg:

> Once I began to study cocaine seriously, collect cases of people who had used it, and began to look for cases of untoward reactions, I found the stories I got were far different from what I had anticipated. So far I have been unable to locate a single cocaine psychosis although I have interviewed over 100 occasional users in the United States and about 20

people in Colombia who used cocaine many times a day for over five years. Neither occasional nor heavy users had reported the serious, profound depression upon cessation of use that is standard description in the literature. In my opinion, cocaine is not an addicting drug in the sense that there are no withdrawal syndromes.

Richard Ashley, an author who has written extensively on drug topics, states:

> The only remaining justification, therefore, for listing cocaine under Schedule II and for the belief that cocaine is an especially dangerous drug is the still generally accepted notion that cocaine leads to severe psychological dependence. This notion is well stated by Edward Brecher, "The *physical* effects of cocaine withdrawal are minor. . . . However, cocaine withdrawal is characterized by a profound psychological manifestation — depression — for which cocaine itself appears to the user to be the only remedy. . . . The compulsion to resume cocaine is very strong." (*Licit and Illicit Drugs*, p. 276)

> As Mr. Brecher subsequently discovered and informed me in December, 1973, the last two statements are erroneous.

> After interviewing more than 75 cocaine users and consulting several other investigators, it is clear to me that the heavy depression that almost all current "authorities" insist follows on the discontinuation of cocaine is *not* a condition which any significant number of cocaine users have ever experienced. On the contrary, no 'typical' user—that is, one who purchases a gram every two or three weeks—reported experiencing any recognizable discomfort on discontinuing use beyond that which everyone feels when something they like is no longer available. As for that very small number of users who both can afford and do indulge themselves ex-tensively—a gram or even two per day—they do report frequently experiencing what is often called the "cocaine blues" when they discontinued use. But this is, according to their testimony, a condition characterized by lassitude, a condition with marked psychological similarities to an alcoholic hangover. It is only rarely a condition characterized by profound depression, or one that drives the user to seek relief in more cocaine.

Finally, as Dr. Andrew T. Weil asserts:

> Cocaine is not a physiologically ad-dicting drug. I have seen more people who were heavily dependent on coffee than on cocaine. The tobacco habit is much harder to break than is the habit of using cocaine. I believe that in our society cocaine is less dangerous than alcohol and the danger of becoming dependent on cocaine is less than the danger of becoming dependent on alcohol.

> The patterns of cocaine use in our society are in no way comparable to the patterns of heroin use. Cocaine users tend to use their drug inter-mittently and rarely; they are just not mixed up with the kind of behavior seen among heroin users. I have observed no violent behavior or psychotic episodes among cocaine users.

Such observations inject a significant element of uncertainty as to the true nature and extent of psychological dependency, if any, resulting from the discontinuance of cocaine use. Even though the available body of knowledge will not permit us to draw conclusions as to the impact of cocaine on a person's health, it is clear that the effects are vastly different from those generally associated with true narcotics. Based on the foregoing, it is clear, from a medical standpoint, that Congress has erroneously classified cocaine with heroin and other opiates for penalty purposes.

## II

■ In light of this medical misclassification, the issue before us, as aptly framed by Judge Lacey in the consolidated cases of *United States v. Brookins* and *United States v. Gueches*, 383 F.Supp. 1212 (D.N.J.1974), decided during the pendency of this case on precisely the same claims, is "whether Congress can rationally classify cocaine, a non-narcotic central nervous system stimulant, as a narcotic for penalty and regulatory purposes. In other words, must the legal or congressional classification of cocaine as a narcotic mirror its medical classification?" In holding that the classification need not conform with the generally accepted pharmacological usage, Judge Lacey prefaced his analysis with four well settled principles which control judicial review of federal legislation such as this: (1) Courts must act with restraint when challenges are made to Congressional action, (2) significant weight is accorded to legislative fact finding, (3) challenges to statutes bear a heavy burden, and (4) statutes such as the instant one must be sustained unless shown to have no rational basis. So framed, Judge Lacey found that the defendants had failed to meet their burden as sufficient rationality apart from purely medical considerations did exist for justifying the penalty system.

Specifically, Judge Lacey held that the study of the use and effect of cocaine on man is far from settled. Cocaine is however known to be extremely euphorogenic, and use of it appears to be on the increase in the United States. There is also conflict among authorities as to the drug's potential for societal harm. Concluding that an honest scientific difference of opinion exists as to the effects of cocaine, the Court held that it could not overturn a legislative enactment by interposing its own judgment on a debatable medical issue. Whether Congress retained the narcotic classification because of the paucity of scientific data on cocaine, or because it is allegedly used by drug abusers alone or in combination with heroin, or in furtherance of treaty obligations, Judge Lacey held that there are a number of rational bases which would sustain the statute.

■ Accepting the realities of the rational basis test, and that Congress need not act wisely or scientifically, only constitutionally, we find Judge Lacey's reasoning and conclusions to be controlling here.

## III

The defendant herein attempts to distinguish the New Jersey cases by arguing that Judge Lacey applied the wrong standard for judicial review. Rather than the minimum scrutiny of the rational basis test, the defendant contends that where, as here, an individual faces the loss of personal liberty allegedly in violation of the constitutional rights to due process, equal protection and freedom from cruel and unusual punishment, the Court should require that the statute rest on valid affirmative factual underpinnings, instead of theoretical or presumed rationale. The defendant thus urges that we apply an actual rationality test here.

Under this more exacting test, the defendant argues that the real issue in this case is "whether Congress actually adopted the peculiar means of setting a harsh penalty for cocaine, or, on the other hand, failed to recognize and simply continued the mistake it first made in 1914 with the passage of the Harrison Narcotics Act, where cocaine was believed to be addictive." Since there is alleged to be little evidence in the hearings or materials presented to Congress prior to passage of the 1970 Drug Law on the question of the medical or societal effects of cocaine, defendant submits that there is no underlying factual basis for Congress' misclassification of cocaine: Since perpetuation of past irrationality is insufficient to justify the statute, the defendant contends that the misclassification is ar-

bitrary, irrational, and must be set aside.

■ The defendant's reliance upon the actual rationality test, upon which his argument depends, is misplaced. In order to invoke the more exacting standard for review, the courts have required that the case involve the infringement of a right explicitly enumerated in the Constitution or recognized as fundamental. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *United States v. Carolene Products Co.*, 304 U.S. 144, at 152–153 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Included among those rights which have heretofore been found to be "fundamental" have been the right to travel, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); the right to vote, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Harper v. Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); the right to essential facilities for prosecution of a criminal appeal, *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); the right to procreation, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and those rights falling within one's "zone of privacy", *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

■ The defendant has not identified any comparable personal right at issue here. We are not dealing with the defendant's loss of liberty, for if cocaine was classified as a non-narcotic as defendant suggests, he would still be subject to criminal sanctions including imprisonment, for violation of 21 U.S.C. § 841(b)(1)(B). Thus, apart from the generalizations surrounding the due process and cruel and unusual punishment proscriptions, the only right arguably referred to by the defendant is the right to be free from a harsher penalty than is imposed for medically similar substances. If such a right exists, it is clearly not a "fundamental" right, and the defendant has offered no case which has so held. Noticeably missing are any drug-prosecution cases which might support defendant's position. Absent a fundamental right at stake, there is no basis upon which to apply the actual rationality test, and accordingly defendant's argument must fail.

■ By contrast, the courts have consistently dealt with challenges to penal classifications under the rational basis test. *See, Duffy v. Wells*, 201 F.2d 503 (9th Cir.), *cert. denied*, 346 U.S. 861, 74 S.Ct. 74, 98 L.Ed.2d 373 (1953); *United States v. Russell*, 285 F.Supp. 765 (E.D.Pa.1968), *aff'd*, 406 F.2d 774 (3d Cir. 1969). Recognizing the wide latitude afforded Congress in making statutory classifications affecting the public health, safety, and welfare, they have generally upheld statutes upon a showing of some rational relationship to a legitimate legislative purpose. *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *United States v. Weatherford*, 471 F.2d 47 (7th Cir. 1972). This is particularly so in those cases involving drug violations. Without exception, in prosecutions where the defendant has challenged the marijuana laws as being based on misinformation and, therefore, unreasonably classifying marijuana in Schedule I with heroin, or for imposing greater penalties than for allegedly more dangerous drugs, the challenges have all been determined under the rational basis test. *United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973). *See, also, Rener v. Beto*, 447 F.2d 20 (5th Cir. 1971); *United States v. Rodriquez-Camacho*, 468 F.2d 1220 (9th Cir. 1972); *United States v. LaFroscia*, 354 F.Supp. 1338 (S.D.N.Y.1973). Consistent with these rulings, we agree that

a statutory discrimination will not be set aside as violative of equal protection so long as some set of facts reasonably may be conceived to justify it. As set forth, *supra*, sufficient minimum rationality for the penalty classification does exist in the instant case to meet Fifth Amendment requirements. Nor do we find that the disparity in penalties offends the Eighth Amendment as the statute "does not exhibit an inclination to visit upon [the] offender[s] a penalty so out of proportion to the crime committed that it shocks a balanced sense of justice." *Halprin v. United States*, 295 F.2d 458 at 460–461 (9th Cir. 1961).

## IV

Resolution of the issue raised here belongs more properly with the legislature or the executive and not in the courts. The wisdom of judicial restraint in this area has been precisely expressed by the Supreme Court in *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974):

> [w]hen Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious to rewrite legislation even assuming, arguendo, that judges with more direct exposure to the problem might make wiser choices.

Such deference is especially warranted here because of the corrective mechanism built into the 1970 Drug Act for dealing with challenges to the improper placement of drugs within the schedules. Under § 811, the Attorney General is empowered to add substances to, or delete substances from, the coverage of the Act, as well as to transfer substances between schedules, all based upon findings that the statutory criteria warrant such modification. Proceedings preliminary to such changes may be initiated by the Attorney General, at the request of the Secretary of Health, Education and Welfare, or on the petition of any interested party. 21 U.S.C. § 811(a). Prior to such proceedings, the Attorney General is required to get an evaluation from the Secretary whose recommendations as to "scientific and medical" questions are binding on the Attorney General. Thus, if new information indicates that the original classification was incorrect or is no longer justified under the statutory criteria, an interested party can seek reclassification. *Kiffer, supra*, at 350–351.

While there is some question as to whether the Attorney General could reclassify cocaine as a non-narcotic, hopefully this route will be pursued to obtain consideration of some of the unresolved questions surrounding the impact of cocaine as highlighted by the expert testimony before us. It is clearly preferable that the drug laws be based upon more substantial factual evidence than the slender threads of minimum rationality present here. As has been the experience with the marijuana laws, hopefully, a more enlightened factual foundation, grounded upon our expanding medical and scientific knowledge, will allow us to deal firmly, but also more fairly, with our drug problems.

An appropriate order will enter.