635 P.2d 986

Mark CHOUINARD, Appellant,

v.

STATE of New Mexico, Appellee.

No. 4361.

Court of Appeals of New Mexico.

Nov. 25, 1980.

James Blackmer, Asst. Atty. Gen., Santa Fe, Sasha Siemel, Asst. Dist. Atty., Albuquerque, for appellant.

Nancy Hollander, Asst. Public Defender, Albuquerque, for appellee.

## OPINION

ANDREWS, Judge.

The defendant in this action was indicted on a variety of counts charging trafficking of a substance which was alleged to be cocaine during the period of May to August, 1977. After promising to appear in October, 1977, the defendant absconded for some twenty months and was re-arrested in May, 1979. During the pendency of his abscondence, the State negligently destroyed the substance underlying all but Count VII of the indictment. Because the prosecution only had a sample of the substance which formed the basis of the criminal complaint as to Count VII, that count was tried first and was separated from a second trial held on the other counts—those in which the underlying evidence had been destroyed. In our view, the destruction of the underlying evidence by the State is dispositive. Therefore, we will deal with the reversal as to all counts in the second trial first and will then address the issues raised as to the trial on Count VII.

### Trial Two

Although the State argues that no prejudice results from the use of tests for which the underlying substance was destroyed in this matter, this is incorrect. First, the defense in this action was that the substance transferred was not coca leaf cocaine, but a manufactured substance which had to be the chemical equivalent of coca leaf cocaine, § 30–31–7 A(1)(d), N.M.S.A. (1978 Comp.) and second, that the destruction of the substance prevented testing in connection with that defense. *See People v. Nation*, 26 Cal.3d 169, 161 Cal.Rptr. 299, 604 P.2d 1051 (1980).

▬ The questions presented in regard to the second trial reduce to one simple issue: Under *State v. Lovato*, 94 N.M. 780, 617 P.2d 169 (1980), where material evidence is destroyed by the State and where that destruction of evidence prejudiced the defendant, does the fact that the defendant had escaped before the evidence was destroyed alter the necessity "that if the State is going to use as evidence the results of a * * * test, it must make provisions for its preservation so that if a timely request is made for retesting by the defendant, the sample taken is available." *State v. Lova-*

*to, id.; cf. People v. Audi*, 73 Ill.App.3d 568, 29 Ill.Dec. 691, 392 N.E.2d 248 (1979).[1] It is clear that if the defendant requests any information which is material to him in his preparation for presenting the merits of his defense or innocence at trial, such a request "falls within the constitutional due process standard announced in *Chacon* and *Trimble v. State*, 75 N.M. 183, 402 P.2d 162 (1965)." *State v. Lovato, supra*. This constitutional right adheres regardless of the intent of the State in the destruction of the evidence. *See also State v. Stephens*, 93 N.M. 368, 600 P.2d 820 (1979). Thus, a report based on destroyed evidence must be suppressed notwithstanding the lack of deliberation on the part of the State—"[n]o different standard applies because the nondisclosure is negligent rather than deliberate." *State v. Lovato, id., citing, Trimble v. State*, 75 N.M. 183, 402 P.2d 162 (1965).

The State destroyed evidence, the substance which was the basis of the charges being tried. The destruction of this evidence was the result of negligence on the part of the State. The State argues that defendant cannot, after he "absconded for at least 20 months—all in violation of his promises to appear. * * * " complain of the "negligent, good-faith, court-ordered destruction of these exhibits 7 months and 13 months after he became a fugitive." This conclusion, argues the State, is based on the fact that, "nowhere in the record did he or his counsel move to test any exhibits until June, 1979." June, 1979, was the month after defendant was re-arrested, and three months before the first trial which began on September 12, 1979.

What the State suggests, therefore, is that either defendant should not benefit from the destruction of evidence while he has absconded after promising to appear; or, even if the State did negligently destroy the substance, defendant did not ask to see it until after the "timely" period in which the State should have retained the substance.

These arguments are incorrect for two reasons. First, we will consider the abscondence and the possible effect it had in the destruction of the substance. We need not reach the question of what would happen if it could be shown that defendant's conduct resulted in the destruction of evidence. There is simply no evidence that suggests the two events are causally related, nor would it be reasonable to suggest that any time a defendant absconds the State may destroy evidence that would be used if he were recaptured. However, since there is no relationship between the abscondence and the destruction of the evidence, the first argument fails. Second, the State suggests that under *State v. Lovato, supra*, the request was not timely. Although that case does not expressly address the question of timeliness, the constitutional principle which underlies *Lovato*, recognized in *State v. Trimble, supra*, is the right of a defendant to confront the evidence against him. The timeliness argument does not involve R.Crim.Proc. 27 but defendant's delay in seeking to have the substance analyzed. The only timeliness issue is whether the analysis would delay the trial. In this case, the request was made in June, 1979, a full three months before the first trial. To hold that such request was untimely, would deprive the defendant of a re-inspection of the evidence should some new point arise in preparation for trial. The State cannot be given the advantage of either keeping or disposing of the evidence as it feels strategically necessary, nor can its acts of negligence prejudice the defendant's rights. *State v. Lovato, supra*, makes it patently clear that even where the defendant only asks for the report of testing on physical evidence initially, he has the right, as the action develops, to make subsequent requests for the actual evidence. In this case, the defendant was denied this right. Thus, the convictions in the second trial are reversed and remanded, with instructions that

---

1. Here, there is no issue as to the substance being used up during testing, nor does the State suggest that the evidence was destroyed by the defendant. *See Jamison v. State Racing Commission*, 84 N.M. 679, 507 P.2d 426 (1973); *State v. Myers*, 88 N.M. 16, 536 P.2d 280 (N.M. App.1975).

the charges be dismissed. *See State v. Trimble, supra.*

### Trial One

We now turn to the first trial in which the defendant was convicted on Count VII of the Indictment. In this trial, several things occurred which defendant raises as error.

At trial, the prosecution's expert chemist made clear errors in his statements concerning the alleged cocaine. He testified that he was unable to state with any certainty whether the substance was l-cocaine, a derivative or the coca leaf which is an anesthetic and a stimulant, or d-cocaine which is man-made, and may have little or no effect as either a stimulant or anesthetic. In addition, the chemist stated d-cocaine is a derivative of the coca leaf. Although another expert who was sitting at the prosecution's table informed the State's attorney that the chemist was giving incorrect testimony, the State continued in the questioning and made no effort to rectify the error. Later, the defense expert did, however, draw the correct distinction between the two substances. It should also be noted that the State's expert testified that he did not know how to tell l-cocaine and d-cocaine apart, and that uncontroverted defense testimony demonstrates that the tests actually performed would not have distinguished the two substances.

During the trial, testimony was allowed over defense objections as to matters which were relevant to the counts which were to be handled in the second trial, but which were totally irrelevant to Count VII. A police officer testified concerning observations dealing with the incidents surrounding Count VI of the Indictment. These incidents did not relate in any way to the incidents surrounding Count VII.

To further exacerbate this situation, the State's attorney in his closing rebuttal stated:

If for some reason * * * you find that it isn't cocaine he still attempted to transfer it, the only reason he failed is because somehow or other chemically he failed

but he attempted the transfer. * * * it was cocaine, it is cocaine, but in addition to that with that Attempt, it doesn't have to be.

Finally, defendant asserts error because of certain instructions given by the trial court, and a comment by the prosecutor in regard to the instructions.

Based on the foregoing, the defendant alleges numerous points of error, which we summarize as follows:

I. The classification of l-cocaine (cocaine derived from the coca leaf) as a narcotic is irrational.

II. The trial court erred when it refused to strike the testimony of the State's chemist when the defendant objected that the chemist's testimony was not competent.

III. The prosecution failed to prove beyond a reasonable doubt that the substance was l-cocaine and not some other substance.

IV. The trial court erred when it failed to correctly instruct the jury as to the elements of the offense of Attempt, and when it did not indicate that the prosecutor mis-stated the law when he stated that it made no difference whether the substance was or was not cocaine.

V. That testimony as to incidents related to other counts was improperly admitted over defense objections.

Although we do not find the classification of cocaine irrational, we reverse the conviction as to Count VII on the first and second points of error. Because of the reversal, we do not reach issues IV and V.

### I. *Irrational Classification of Cocaine as a Narcotic*

Defendant argues that cocaine is not a narcotic, nor does it share similar properties with any other drugs on the applicable schedule, Schedule II of the Controlled Substance Act [§§ 30–31–1 to 30–31–40, N.M.S. A.1978]. Therefore, he argues its classification is irrational.

This Constitutional challenge to the Controlled Substance Act presents a question of first impression in this State. However, the federal statute, 21 U.S.C. § 812(c) Schedule II(a)(4), which is similar to the New Mexico provision, § 30–31–7A(1)(d), has repeatedly been challenged on the same basis with no appellate court recognizing that challenge.

Section 30–31–5(B), N.M.S.A.1978, sets the criteria for controlled substance in Schedule II: (1) the substance has a high potential for abuse; (2) the substance has a currently accepted medical use in treatment in the United States or currently accepted medical use with severe restrictions. According to defendant, the record supports a conclusion that cocaine is not a narcotic drug and does not meet the characteristics for a Class II controlled substance as required by § 30–31–5(B). While the record does contain testimony that cocaine does not lead to a physical dependency, defendant produces no support for the proposition that the drug is not psychologically addicting.

In *United States v. Brookins*, 383 F.Supp. 1212 (D.C.N.J.1974) the court responded to a similar argument. In that case, defendant alleged that "no reputable physician in the country would testify that cocaine is a narcotic drug" and "cocaine (does not) carry with it the potential for social harm which is inherent in the true narcotic drug." 383 F.Supp. at 1214. At the same time, the government conceded that cocaine is not a true narcotic in the strict medical or pharmacological sense of the term but argued that the classification was rational because of the similarity between cocaine and other drugs in that classification in terms of "cocaine's potential for societal harm." 383 F.Supp. at 1214. In narrowing the issue, the court sought to answer whether Congress can rationally classify cocaine, a non-narcotic central nervous system stimulant, as a narcotic for penalty and regulatory purposes. It held that Congress can, and we hold that the New Mexico State Legislature can do the same.

The appropriate standard to be applied in determining the issue is succinctly set forth in *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), wherein it stated (304 U.S. at 153, 154, 58 S.Ct. at 784):

Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. * * *

But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either shown or which could reasonably be assumed affords support for it.

*Accord, see United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed. 469 (1974). In *Smaldone*, the district court had denied without an evidentiary hearing defendant's motion to dismiss the indictment on the ground that the statutory classification of cocaine as a narcotic was arbitrary, capricious and lacking in reason. Affirming, the Court of Appeals stated on the issue of congressional classification: "The judicial approach to this kind of question is that the classification will be upheld if any facts justify it." 484 F.2d at 320.

Numerous other federal and state courts have been presented with the question and have concluded that the classification is not "irrational." *See generally, United States v. Vila*, 599 F.2d 21 (2nd Cir. 1979), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Hobbs*, 392 F.Supp. 444 (D.C.Mass.1975); *United States v. Castro*, 401 F.Supp. 120 (E.D.Ill. 1975); *State v. Erickson*, 574 P.2d 1 (Alaska 1978); *People v. Davis*, 92 Cal.App.3d 250, 154 Cal.Rptr. 817 (1979); *People v. Portano-*

va, 392 N.Y.S.2d 123, 56 A.D.2d 265 (N.Y. App.1977); *People v. Piccoli*, 403 N.Y.S.2d 820, 62 A.D.2d 1078 (N.Y.App.1978).

## II. *The Expert Testimony*

■ If a witness bases his opinion on an assumption which is later in the trial shown to be false and if that false assumption is critical to the entire nature of proof in the case, the conviction cannot stand. *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977).

In this trial, the testimony of the State's chemist was material to one of the elements of the crime—that the substance in question was, in fact, cocaine. The New Mexico Controlled Substance Act makes a distinction between those substances which are derivatives of coca leaves and those substances which are not so derived. If a substance is not a derivative of coca leaves, it is not a controlled substance unless shown to be chemically equivalent with a substance that is derived from coca leaves. Section 30–31–7, N.M.S.A.1978. In the crime of transfer of a controlled substance—in this case cocaine—the State must show that the substance transferred was cocaine. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (N.M.App.1976).

Defendant's expert testified that the State had not shown through its analysis of the substance that it was in fact a form of cocaine (l-cocaine) which is a derivative of coca leaves nor a substance chemically equivalent to l-cocaine. This was defendant's theory of his defense. If the jury believed the State's chemist when he testified both l-cocaine and d-cocaine were derivatives of coca leaves, defendant was deprived of the very essense of that defense.

■ This particular witness based his testimony on a false assumption that both d-cocaine and l-cocaine are derived from coca leaves. No satisfactory explanation has been given for his conclusion. Without such an explanation the chemist's conclusion was not competent evidence and should have been stricken. *See State v. Brionez*,

91 N.M. 290, 573 P.2d 224 (N.M.App.1977). The court's failure to strike this testimony was error. Thus, absent sufficient additional evidence as to what the substance was, it is clear that the State failed to prove by this expert's testimony, the element of this crime which requires the substance to be cocaine. Though this testimony may have been sufficiently prejudicial to require reversal, we need not reach that issue in light of our discussion of failure of proof in Section III below.

## III. *Failure of Proof*

In a criminal prosecution, the State has the burden of proving each of the elements of a crime beyond reasonable doubt. *State v. Carter*, 93 N.M. 500, 601 P.2d 733 (N.M. App.1979), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In its attempt to do so, the State presented evidence to the effect that a police detective drove defendant to his (Chouinard's) residence where defendant invited the detective in to "show him something." Defendant then went to a refrigerator and pulled out a plastic bag with white powder (suspected cocaine), put it on a table in front of the detective and invited the detective to "roll up the biggest bill you have."[2] The detective inspected the cocaine as defendant went into an adjoining room. At that time the detective heard a noise he identified as the sound of Chouinard pumping the slide of a slide-action shotgun. When the detective feigned outrage about the presence of the gun Chouinard advised him that the shotgun was for "our protection" in case anyone came through the door while the cocaine was there. Such evidence may have been relevant and material to the issue of defendant's guilt. Rule 401 N.M.R. Evid. However, since we have determined that the chemist's testimony should have been stricken, the only proof as to what the substance actually was is the inference created by the shotgun, the defendant's statements, and the chlorax test which was performed.

---

**2.** The detective understood this to mean that defendant wanted him to use the rolled-up bill to "snort" some of the suspected cocaine.

The chlorax test does not prove that the substance was cocaine as unrefuted evidence shows that it would have been positive even if the substance was the isomer. The actions and statements of the defendant show only that he believed the substance to be cocaine. Thus, in the absence of a definitive chemical analysis, or any competent expert testimony on the identification of the substance, the State has failed to meet its burden of showing the substance to be within the definition of the statute.

*Conclusion*

All convictions resulting from defendant's first and second trials are reversed. The defendant is discharged.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WOOD, C. J., concurs in part and dissents in part.

WOOD, Chief Judge (concurring in part and dissenting in part).

I concur in the discussion and result as to trial two. I concur in the discussion and result concerning the classification of cocaine. I concur in the reversal of the trial one conviction solely on the basis that the trial court erred when it denied defendant's motion to strike the testimony of the State's chemist. I do not agree that there was a failure of proof as to the nature of the substance involved in trial one; under the evidence the jury could properly draw the inference that the controlled substance, cocaine, was involved. In holding otherwise, the majority are playing fact finder; that was the jury's function. Accordingly, I dissent from the result as to trial one.