STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM MCMINN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 26, 1984—Decided December 24, 1984.

Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.

*Joseph H. Rodriguez,* Public Defender, attorney for appellant (*Birol John Dogan,* designated attorney, on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Greta-Ann Gooden,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM.

We affirm the denial of defendant's motion for a dismissal of the count of the indictment charging him with distribution of more than one ounce of cocaine, of which at least 3.5 grams were pure freebase cocaine, in violation of *N.J.S.A.* 24:21-19 and *N.J.S.A.* 24:21-19(b)(2), substantially for the reasons set forth in the comprehensive letter opinion of Judge Egan. As the sole issue on appeal is defendant's claim that the classification of cocaine as a Schedule II narcotic under the New Jersey Controlled Dangerous Substances Act, *N.J.S.A.* 24:21-1 *et seq.* violates his constitutional rights of equal protection and due process, we include herein the following pertinent part of Judge Egan's unpublished opinion dated February 11, 1982 rejecting this contention:

"The constitutional attack is based on the assertion that (1) the quantitative distinction in *N.J.S.A.* 24:21-19b(2) between more than an ounce of cocaine and less than an ounce, and the qualitative distinction between 3.5 grams of the 'pure free base' drug and less than 3.5 grams, is arbitrary and capricious in violation of the United States and New Jersey constitutional guarantees of equal protection and due process; (2) the statute is unconstitutionally vague because it fails to define a 'pure free base' Schedule I or II narcotic drug; (3) the statutory penalty of up to life imprisonment violates the United States and New Jersey constitutional guarantee against cruel and unusual punishment; (4) the legislative classification of cocaine as a 'narcotic' drug is erroneous and therefore violative of the constitutional guarantee of equal protection and due process.

\*      \*      \*      \*      \*      \*      \*      \*

"In order to provide a factual platform for their argument as to the erroneous classification of cocaine as a narcotic the court granted defendants' request for an evidentiary hearing on that issue. At that hearing, Ronald K. Siegel, Ph.D., an Associate Professor in the Department of Psychiatry and Biobehavioral Sciences in the University of California at Los Angeles School

of Medicine testified for the defense. Charles Tindall, Ph.D., of the Forensic Science Bureau of the New Jersey State Police testified for the State.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"To summarize, Dr. Siegel's opinion was that cocaine use absolutely should not be legalized or decriminalized, but that it should be reclassified as a Schedule III drug rather than Schedule II. He stated that cocaine should be classified with the amphetamines . . . .

"The State's expert witness was Charles Tindall, an aide to the Bureau Chief of the Forensic Science Bureau of the New Jersey State Police with a Ph.D. in chemistry from Ohio State University. Dr. Tindall did not go into the historical detail of the discovery and development of cocaine as Dr. Siegal had, nor the number of users, the classification of users, the effect of its use or the relationship between its use and the commission of other crimes. He did say he was familiar with our Controlled Dangerous Substances Act and its history and he said that the act is regularly updated from time to time with regard to the inclusion of drugs and their classification and reclassification within the five schedules of the act. This, he said, is primarily done by the Federal Government whose law we parallel. This is done on the basis of records maintained and reviewed by the Federal Drug Enforcement Agency concerning the potential for drug abuse and the need for rescheduling the various drugs. He stated he was familiar with the statutory criteria for the classification of Schedule II drugs and said that the criterion of 'high potential for abuse' was based on an analysis of how often the drug appears in nonmedical use.

"With regard to the issue of how a narcotic is defined, he did not basically disagree with Dr. Siegel. He would not say there is a chemical definition, but he confirmed that biologically a narcotic is a drug derived from the opium poppy and medically it is a drug derived from the opium poppy which produces narcosis. He agreed that cocaine does not fit within either of

those definitions, but he added that our New Jersey Controlled Dangerous Substances Act contains a specific legal definition which, by its terms, includes cocaine. He further confirmed that our New Jersey act originated from the Harrison Act of 1914.

"From all of this, it can readily be found and stated as a fact that cocaine is not botanically, pharmacologically or medically a narcotic. If that were the extent of the issue before the court, the analysis and inquiry would end here. The legal issue, however, goes further. Aside from whether the classification of cocaine as a 'narcotic drug' in the definitions in *N.J.S.A.* 24:21–2 was a historical accident pharmacologically, the real question is whether it was and is a legal error as argued by defendants.

"The relevant statutory definition in *N.J.S.A.* 24:21–2 reads: 'Narcotic drug' means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis: (a) Opium, coca leaves, and opiates; (b) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates; (c) A substance (and any compound, manufacture, salt, derivative, or preparation thereof) which is chemically identical with any of the substances referred to in subsections (a) and (b), except that the words 'narcotic drug' as used in this act shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.

"There being no dispute that cocaine is produced by extraction from coca leaves as delineated in subsection (a) of the definition it is clear that our legislature intended to include cocaine within the legal definition of a narcotic drug. This is fortified by the language of subsection (c) which *excludes* coca leaves from the definition if they are 'decocainized' or extracts of coca leaves if they 'do not contain cocaine.' The question, therefore, is not whether the definition of cocaine as a narcotic was unintentional or ambiguous; it's whether it was wrong.

"Defendants cite no New Jersey case for the proposition that the definition is legally untenable or invalid. They urge, however, that this court adopt the reasoning of the Appellate Court

of Illinois in *People v. McCarthy*, 93 *Ill.App.*3d 898 [49 Ill.Dec. 382], 418 *N.E.*2d 26 (1981), rev'd 86 *Ill.*2d 247 [56 *Ill.Dec.* 67], 427 *N.E.*2d 147 (1981), which held that the classification of cocaine as a Schedule II in the Illinois statute was without a rational basis and violated defendant's right to equal protection under the United States and Illinois Constitutions. It did not, however, find a constitutional infirmity in classifying it as a Schedule II controlled substance, but only in classifying it as a narcotic. The court, therefore, affirmed the conviction but reduced the degree of the crime.

"Since the date of the evidentiary hearing in this matter, the Supreme Court of Illinois reversed the Appellate Court so that defendant's reliance on it is useless. Defendants, therefore, are left without a case directly on point in this or any other jurisdiction.

"The first question that should be addressed is whether the constitutional guarantees of equal protection and due process are violated by erroneously classifying cocaine as a 'narcotic' drug. If we are concerned only with the medical or pharmacological definitions of narcotics, it is evident that cocaine does not fall within them. Does that mean the legislature cannot so classify it for purposes of regulation and penalty? The answer is clearly no. In *United States v. Stieren*, 608 *F.*2d 1135, 1136 (8 Cir.1979), the court said, 'it is well settled that the classification of cocaine under Schedule II of 21 *U.S.C.* § 812 is not a constitutional violation.' *See also, United States v. Brookins*, 383 *F.Supp.* 1212 (D.N.J.1974) aff'd 524 *F.*2d 1404 (3 Cir.1975); *United States v. McCormick*, 565 *F.*2d 286 (4 Cir.1977), *cert.* den. 434 *U.S.* 1021, 98 *S.Ct.* 747, [54] *L.Ed.*2d [769] (19[78]); *United States v. Vila*, 599 *F.*2d 21, 25 (2 Cir.1979), *cert.* den. 444 *U.S.* 837, 100 *S.Ct.* 73, 62 *L.Ed.*2d 48 (1979); *Government of Canal Zone v. Davis*, 592 *F.*2d 887, 890 (5 Cir.1979); *United States v. Szycher*, 585 *F.*2d 443, 444–445 (10 Cir.1978); *United States v. Solow*, 574 *F.*2d 1318–1320 (5 Cir.1978); *United States v. Lane*, 574 *F.*2d 1019, 1022 (10 Cir.1978), *cert. den.* 439 *U.S.* 867, 99 *S.Ct.* 193, 58 *L.Ed.*2d 177 (1978); *United States v.*

*Wheaton*, 557 *F*.2d 275, 277 (1 Cir.1977); *United States v. Marshall*, 532 *F*.2d 1279, 1287–1288 (9 Cir.1976).

"As the court stated in *Stieren*, 608 *F*.2d at 1126–1137:

It is within the legislative prerogative to classify cocaine, which is a non-narcotic central nervous system stimulant, as a narcotic for penalty and regulatory purposes. 21 *U.S.C.* § 802(16)(A). The use of cocaine poses serious problems for the community and has a high potential for abuse. Congress' choice of penalty reflects a societal policy which must be adhered to by the courts. [footnote omitted]. Congress has the power to reclassify cocaine. This power has been delegated to the Attorney General. 21 *U.S.C.* § 811(a)(1). If cocaine is to be reclassified, defendant's arguments should be made to the legislative branch, not the courts.

"The next question is whether our statute is unconstitutionally vague because it fails to define what is meant by a 'pure free base' drug. The court finds nothing vague in this terminology. There can be no quibble that 'pure' means undiluted, unadulterated or unalloyed. The words 'free base' may well be redundant (a not uncommon grammatical failing in legislative and legal documents; witness the redundancy in deeds to real estate which state 'give, grant, bargain, alien, release, enfeoff, convey and confirm' when all that is meant is 'convey' or 'sell'), but redundancy is not vagueness. Anyone who has ever bought, sold or possessed cocaine or who has tried a case involving cocaine knows that it can be 'cut' and that the purer the coke the more it can be cut. The decisive question for purposes of a vagueness argument is whether the defendant was reasonably apprised, as a matter of common intelligence, in light of human experience, that his particular conduct was unlawful. *State v. Lashinsky*, 81 *N.J.* 1, 18 (1979). Vagueness in this sense is essentially a procedural due process concept grounded in notions of fair play. *Colten v. Kentucky*, 407 *U.S.* 104, 110, 92 *S.Ct.* 1953, 1957, 32 *L.Ed.*2d 584, 590 (1972). The defendants' argument is without merit.

"The next question is whether the qualitative distinction between an ounce and less than an ounce, and the qualitative distinction between 3.5 grams of the 'pure free base' drug and less than 3.5 grams is arbitrary and capricious in violation of

the constitutional guarantees of equal protection and due process.

"It is clear that absent infringement of fundamental rights or discrimination against a suspect class, equal protection and due process are not denied if the legislative classification is reasonable and bears a rational relationship to a legitimate government objective. *Rubin v. Glaser*, 83 *N.J.* 299 (1980); *State v. Senno*, 79 *N.J.* 216 (1979); *McGinnis v. Roysten*, 410 *U.S.* 263, 93 *S.Ct.* 1055, 35 *L.Ed.*2d 282 (1973). It is not significant that the classification may be mathematically imperfect. *Phoenix Associates v. Edgewater Pk. Sewer. Auth.*, 178 *N.J.Super.* 109 (App.Div.1981), aff'd 89 *N.J.* 2 (1982); *Velmohos v. Maren Engineering Corp.*, 168 *N.J.Super.* 520 (App.Div.1979), aff'd 83 *N.J.* 282 (1980).

"Enunciating the general test to be applied in this area, the Supreme Court in *State v. Smith*, 58 *N.J.* 202, 206–207 (1971), stated:

We accept the principle that in the administration of criminal justice no person can be subject to a greater or different punishment for an offense than that to which others of the same class are subjected. However, equal protection is not denied because a penal statute might have gone farther than it did or might have included some persons or classes of persons who were excluded. The need for a particular or an additional sanction in one area may appear to the legislative mind in different dimensions and proportions—as more acute in one situation than in another. The constitutional prescription for equal protection does not mean that a designated sanction must reach or be imposed upon every class of violators of the narcotics laws to which it might be applied—that the Legislature must punish or regulate all such persons in precisely the same way or not at all. The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. In pursuing a legitimate objective, it may recognize degrees of harm or possible harm and strike at what it feels more urgently needs repression. If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, *i.e.*, that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal. [citations omitted].

"Applying the general test described, the classification attacked by the defendant is constitutionally sound. The Legislature has determined that an ounce or more of a Schedule I or II narcotic, consisting of at least 3.5 'pure free base', is more dangerous or harmful than such a substance which is less than an ounce, although containing more than 3.5 grams of the 'pure free base' narcotic. There are a myriad of rational bases which would justify this legislative determination."

We are in accord with Judge Egan's reasoning as to the constitutionality of the subject legislation and accordingly affirm his determination denying defendant's motion.

Affirmed.